MORSE, Respondent, vs. MODERN WOODMEN OF AMERICA, Appellant.

*October 5—October 23, 1917.*

*Corporations: Liability for torts of agents: Exemption of benevolent association: Fraternal insurance society: Libel: Joint wrongdoers: Master and servant: Separate actions: Judgment in one not a bar until satisfied: Jurisdiction: Evidence: Competency: Prejudicial error: Excessive damages: Appeal: New trial.*

1. The Modern Woodmen of America, a fraternal insurance corporation conducted on the assessment plan and having, besides a benefit fund out of which death claims are to be paid, a general fund which may be used for other purposes, is not a purely benevolent association and its funds are not all trust funds in such a sense that it should be exempt from the ordinary liability of a corporation for the torts of its employees or agents.

2. A corporation is liable for the torts of its agents within the scope of their employment and in furtherance of the corporate business, and this includes libel.

3. A libel may be the joint act of several persons, who may in such case be sued jointly or separately at the plaintiff's election.

4. Where two are sued separately for libel, in neither action does the liability of the other furnish any defense or mitigation of damages; both actions may be prosecuted to judgment, but there can be but one satisfaction; .when one judgment is satisfied it becomes a bar to the other action.

5. A master and servant acting together in publishing a libel are joint publishers thereof and may be sued jointly or severally; and a judgment against one is not a bar to the action against the other until it is satisfied.

6. The fact, in such a case, that the servant or agent circulated the libel in a part only of the territory in which it was circulated, and the fact that in a separate action against the agent plaintiff sought only to recover damages for the circulation in such part, are immaterial in an action against the principal.

7. Where, in such case, plaintiff recovered only nominal damages in the action against the agent, the payment of the amount of the verdict into court could not of itself operate to bar the action against the principal, especially before the time for appeal had expired.

8. A plaintiff who brings separate actions against several joint wrongdoers has the right to choose which judgment he will accept and satisfy.

9. Where the principal authorized or ratified the act of an agent in

circulating a libel in one state, an action against the agent in a court of that state and recovery of a judgment for damages on account of such circulation in that state only did not preclude the bringing of an action against the principal in the same court or affect the jurisdiction of that court to entertain such action.

10. In an action for libel, the withdrawal from the jury of the positive testimony of a witness, based on personal knowledge, that one of the charges in the alleged libelous publication was true, is *held* to have been a prejudicial error, especially in view of the large damages awarded to plaintiff and of the fact that in an action against an agent for circulating the libel in the state of plaintiff's residence only nominal damages were awarded.

11. The damages, both compensatory and exemplary, awarded in an action for libel being surprisingly large, and there having been a prejudicial error in the withdrawal of evidence from the jury's consideration, this court grants a new trial, rather than an option to take or suffer judgment for a smaller sum.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Reversed.*

Libel. The defendant is a fraternal beneficiary society incorporated in Illinois and doing business in that and adjoining states. The plaintiff was a member of the society and held a certificate or policy of insurance therein. In 1912 the head camp or governing body of the defendant met and changed the by-laws and increased the rates of insurance. This action aroused opposition among policy-holders and agitation for repeal of the new by-laws was widespread, while officers of the head camp carried on through their agents and local camps an active campaign by circulars and lectures to retain the new by-laws and rates. The plaintiff participated as a speaker and writer in this contest as an "insurgent" in favor of the repeal of the new rates. In the month of March, 1913, there was circulated in Wisconsin and other states among the members of the order an unsigned circular entitled "Who's Who and Why. The Pedigree of *Alfred Leslie Morse,* M. S." This circular characterized plaintiff as a "mudslinger," and said that the tale of his life could not well be told around the neighbors' firesides. It also stated that the plaintiff deserted his wife and six children

while living at Necedah, Wisconsin, in 1897, and contained a copy of a statement purporting to be signed by the plaintiff's former wife stating that plaintiff abandoned her and six children at Necedah in 1897 and afterwards obtained a divorce from her on perjured testimony. The circular also stated that plaintiff did not visit his aged father until the death of his mother and that his unfilial conduct so enraged his father that he (the father) disinherited the plaintiff and made the plaintiff sign over his interest in the estate to his deserted wife.

The publication and circulation of this circular is the libel complained of in this action. The answer denied that the defendant's agents or officers composed, published, or circulated the libelous paper, alleged that the article was in fact true, and also alleged as a separate defense that the plaintiff sued Benjamin F. Keeler for the same libel in the circuit court for La Crosse county and obtained judgment in that action after trial thereof for one dollar, and that said judgment has been paid to the clerk of said court and the judgment satisfied of record.

The jury upon the trial of the present action returned a special verdict as follows:

"(1) Did the defendant, through its general officers or agents or either or any of them, authorize or direct the publication or circulation of the circular entitled 'Who's Who and Why,' set forth in plaintiff's complaint herein?  *A.*  Yes.

"(2) If you answer question No. 1 'No,' then did the defendant, through its general officers or agents or either of them, learn that the said circular was being circulated and used by agents and subordinate officers of the order in the campaign against the so-called 'insurgents'?  *A.*  (Not answered by jury.)

"(3) If you answer question No. 2 'Yes,' then did such officers and agents, or either or any of them, acquiesce in the continued use thereof for such purpose?  *A.*  (Not answered by jury.)

"(4) If you answer either questions No. 1 or No. 3 'Yes,' then were such officers actuated by express malice?  *A.*  Yes.

"(5) Is it true that at the time of the publication and circulation of said circular that the plaintiff was a 'mudslinger'? *A.* No (by direction of the court).

"(6) Is it true that investigation of the life and character of *Alfred Leslie Morse,* M. S., has disclosed an amazing story that cannot well be told around the neighbors' firesides, for the reason that nothing has been found in his life that would serve as an example to the young and rising generation? *A.* No.

"(7) Is it true that while the plaintiff was serving as a minister of the gospel, residing at Necedah, Wisconsin, he deserted his wife and six children in the fall of 1897? *A.* No (by direction of the court).

"(8) Is it true that the plaintiff procured a divorce from his wife in Columbia county, Wisconsin, on perjured testimony? *A.* No (by direction of the court).

"(9) Is it true that in the fall of 1897 the plaintiff, though able to earn money to support his wife and children, refused to do so? *A.* No.

"(10) Is it true that the plaintiff did not visit his aged father until the death of his mother, and that he was with difficulty persuaded to attend the funeral, and that said conduct so enraged his father that he not only made provision to disinherit the plaintiff, but made him sign to his wife and children all interest that the plaintiff might have in his estate? *A.* No (by direction of the court).

"(11) At what sum do you assess the plaintiff's compensatory damages? *A.* Fourteen thousand eight hundred dollars ($14,800).

"(12) At what sum do you assess his punitory damages? *A.* Five thousand dollars ($5,000)."

The trial court directed that $4,800 be remitted from the compensatory damages, which was done, and judgment entered for $10,000 compensatory damages and $5,000 punitory damages, with costs, and the defendant appeals.

For the appellant there were briefs by *Truman Plantz* of Warsaw, Illinois, and *Wolfe & Reid* of La Crosse, attorneys, and *C. W. Graves* of Viroqua and *Nelson C. Pratt* of Omaha, Nebraska, of counsel; and the cause was argued orally by *Mr. Graves* and *Mr. Pratt.*

For the respondent there were briefs by *Mahoney & Schubert* of La Crosse, attorneys, and *John D. Dennison, Jr.,* of Des Moines, Iowa, and *N. C. Else* of Osborn, Kansas, of counsel; and the cause was argued orally by *Paul W. Mahoney.*

WINSLOW, C. J.   The appellant's first contention is that it is a purely benevolent association, that all its funds are trust funds, and that the same rule should be applied to it as has been recently applied by this court to incorporated charitable hospitals, namely, that it is not to be held liable for the torts of its employees or agents in the absence of negligence in their selection.   *Morrison v. Henke,* 165 Wis. 166, 160 N. W. 173.

We cannot sustain this contention.   While the order has social, benevolent, and charitable features, it is essentially, so far as the head camp is concerned, an insurance corpora- tion conducted on the assessment plan.   It appears in the evidence that it has two principal funds, the benefit fund, out of which death claims are to be paid, and the general fund, which may be used for other purposes, and out of which hundreds of thousands of dollars were paid for services and expenses in combating the effort to secure a repeal of the legislation raising the premium rates.   True, the defendant has no vast reserve fund as the old-line insurance companies have, and for legislative purposes a clear distinc- tion may be drawn between the two classes of corporations (*Northwestern Mut. L. Ins. Co. v. State,* 163 Wis. 484, 155 N. W. 609, 158 N. W. 328), but its funds do not seem to be any more truly trust funds than the funds of any mutual life insurance company, and we apprehend that this conten- tion would not be made if the defendant were such a com- pany.   The doctrine is now very well settled that a corpora- tion is liable for the torts of its agents within the scope of their employment and in furtherance of the corporate busi-

ness, and this includes libel. *Zinc C. Co. v. First Nat. Bank,* 103 Wis. 125, 79 N. W. 229; Odgers, Libel & S. (5th ed.) 592; Newell, Slander & L. (3d ed.) § 450. In passing, we may say that we regard the evidence as sufficient in the present case to warrant the jury in finding that the libel here complained of was either authorized or ratified by the responsible officers or agents of the defendant company in an attempt to further the corporate business.

Two or three well established principles may well be stated before proceeding further. A libel may be the joint act of several persons, who may in such case be sued jointly or separately at the plaintiff's election. *Monson v. Lathrop,* 96 Wis. 386, 71 N. W. 596. The plaintiff may sue two separately, and in neither action will the liability of the other furnish any defense or mitigation of damages; both actions may be prosecuted to judgment, but there can be but one satisfaction; when one judgment is satisfied it becomes a bar to the other actions. Newell, Slander & L. (3d ed.) § 487.

A master and servant acting together in publishing a libel are joint publishers thereof and may be sued jointly or severally just as in case of other joint tortfeasors. Odgers, Libel & S. (5th ed.) 584. If sued separately, the same rule would apply as in other tort actions, viz. that a judgment against one is not a bar to the action against the other until it is satisfied.

It appears that the libel was circulated in the state of Wisconsin by one Keeler, the state deputy for the defendant, in the regular course of his duty as such deputy, but that he did not circulate it in any other territory, the circulation outside of Wisconsin being apparently done by other deputies or agents.

It also appears in the case (by admission rather than by proof) that the plaintiff sued Keeler for the libel in April, 1914, and brought the present action in November, 1914;

that the Keeler action was tried in May, 1915; that the claim of damages in that case was limited to those caused by the publication and circulation in Wisconsin; and that a verdict for the plaintiff for one dollar damages was rendered therein. The defendant alleges in its amended answer that judgment was entered on this verdict and that it has been fully paid to the clerk of the court and the judgment satisfied of record. Upon the trial of the present case on May 11, 1916, it was stated by plaintiff's counsel, during a colloquy with the court, that the judgment had not been entered until May 9, 1916, that it had not been paid, and that the plaintiff still had the right to appeal from it. This statement was not challenged by defendant's counsel at the time or afterwards, so far as we can ascertain, and the plaintiff's counsel then disclaimed recovery in this action for any damages for the circulation in Wisconsin, on the ground, evidently, that those were covered by the Keeler action. At a later period of the trial the clerk of the court was called as a witness by the defendant, but before any offer of evidence was made the plaintiff objected to any evidence sustaining the separate defense aforesaid, and the objection was sustained and the witness left the stand. The trial judge charged the jury that they should not take into consideration any damages resulting from the circulation of the libel by Mr. Keeler.

The proof as to the proceedings in the Keeler case seems very unsatisfactory; direct proof is apparently lacking. However, on the admissions made on the trial and in respondent's brief, it may doubtless be taken as established that the suit against Keeler was brought for the circulation of the libel in Wisconsin alone, that a verdict of one dollar was obtained therein in May, 1915, and that just before the trial of this case a year later judgment was entered on the verdict. Further than this nothing can be considered as proven. The plaintiff denies that the judgment was paid, the defendant alleges in its answer that it was paid, and the record in the

case was ruled out. The condition of the record has been thus quite fully stated, not merely because it is quite unsatisfactory, but because it seems necessary in order to fully understand the discussion of the next two contentions made by the defendant, namely, (1) that the Keeler case is a bar to this action and (2) that the circuit court had no jurisdiction of the present action because of the prosecution to judgment of the Keeler action. As to the first of these contentions it is very evident that it cannot prevail. The evidence tends to show that the defendant and its agent, Keeler, were joint tortfeasors, providing, of course, that the libel was not true. The fact that Keeler circulated the libel in only a part of the territory cuts no figure. Having knowingly participated with his principal in the circulation, he becomes jointly liable with his principal, although his efforts were confined to a part only of the field. Upon principles already stated, it was therefore entirely competent for the plaintiff to sue both Keeler and the defendant in separate actions and prosecute both actions to judgment. Of course, if he accepted payment of one judgment and discharged it that would bar the other action, because he can have but one satisfaction; but this fact was neither proven nor offered to be proven and was denied by the plaintiff. The payment of the amount of the verdict in the Keeler action into court cannot itself operate as a bar, especially before the time for appeal has expired. If such were the case, the right to bring separate actions against several joint wrongdoers would be a barren right. It must be that when the plaintiff exercises that right he must also have the right to choose which judgment he will accept and satisfy. It is not shown here that he has accepted and satisfied the Keeler judgment; in fact, for aught that appears he may still appeal from it, hence it can be no bar to this action.

As to the second contention, it seems to us to involve confusion of thought. The civil action for libel is a transitory

action and may be brought wherever jurisdiction of the person of the guilty parties can be obtained. Hence there was nothing to prevent the bringing of both actions in the circuit court for La Crosse county at the same time if jurisdiction of both defendants could be obtained there, and the fact that in the Keeler action the plaintiff sought only to recover for damages by reason of the circulation of the libel in Wisconsin is absolutely immaterial in the present action. If the defendant corporation authorized or ratified the acts of Keeler in Wisconsin it is responsible and may be recovered against therefor in the courts of Wisconsin, simply because as principal it is jointly responsible for those acts, and the suing of one in Wisconsin does not prevent the suing of the other in Wisconsin. There is really no question of jurisdiction in the case.

One ruling upon evidence seems to us clearly erroneous and substantially prejudicial. Two of the most serious charges in the circular were that the plaintiff abandoned and refused to support his family while living at Necedah. The truth of these charges was submitted to the jury by questions 7 and 9 of the special verdict and decided in favor of the plaintiff. Upon the trial one Mrs. Iverson, a near neighbor of the plaintiff's family at Necedah, testified positively that the plaintiff was absent from home half of the time, and that the family was destitute of fuel, food, and money during considerable periods and was supplied with the necessities of life by the charity of the neighbors. This testimony was not based on hearsay or general report, but upon personal knowledge obtained by the witness by visiting the home a number of times and participating in the relief given.

This was material testimony, depending for its cogency on the credibility of the witness, but the trial court in submitting the case to the jury withdrew from their consideration the entire testimony of the witness. This seems to us not merely erroneous but necessarily prejudicial, especially

in view of the magnitude of the jury's verdict.  We have been unable to persuade ourselves that this verdict ought to stand, especially in view of the fact that in the Keeler case another jury returned a verdict of one dollar for the publication of the same libel in Wisconsin (the state of the plaintiff's residence).  It is not that the verdict in the Keeler case is in any respect decisive, of this case, but that this great disparity seems to demonstrate that one jury or the other, perhaps both, have failed to give due weight to the evidence.

The amount awarded for exemplary damages seems to us much too great, particularly in view of the very generous award made (even after the remission) for compensatory damages.  Exemplary damages are awarded by way of punishment only, and our statute (sec. 4569, Stats. 1915) fixes the maximum fine which may be imposed for a criminal libel at $250.  This is not at all conclusive, but quite suggestive. We deem the evidence sufficient to warrant the submission to the jury of the question of exemplary damages.  We do not deem it necessary, however, to discuss that question at length.

In view of the surprisingly large verdict, especially as to exemplary damages, suggesting very strongly a failure to give proper consideration to the evidence, and in view also of the positively erroneous and prejudicial ruling above referred to, we think the interests of justice will be better subserved by the awarding of a new trial rather than by an attempt to cut down the damages, and give options to the parties to take or suffer judgment, as we have sometimes done.

Other errors are claimed, but we have found none which would call for reversal of the judgment or even for extended treatment.  It seems that in the fourth question of the verdict the words "or agents" should be inserted after the word "officers" in order to make the question conform to the terms of the first and second questions to which it refers.

*By the Court.*—Judgment reversed, and action remanded for a new trial.