### PANDOLFO v. BANK OF BENSON et al.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1921.)

No. 3589.

1. **Libel and slander ⚙️81—Complaint held to show publication was within authority of unincorporated association.**

   A complaint which alleged that the defendants were members of an unincorporated association of bankers, and that they were engaged in printing a book and pamphlet of their proceedings, and that in the tenth volume of such book was printed a defamatory letter concerning plaintiff, which was read by the secretary at a meeting of the association, sufficiently shows that the publication was within the scope and purpose of the association, so as to state a good cause of action against the members thereof for libel.

2. **Associations ⚙️16—Members liable for libel by agent within scope of authority.**

   The members of an unincorporated association are liable in their collective capacity for tort, and are answerable for damages for libel published by their agent with their authority, while the agent is acting within the scope of his employment.

3. **Associations ⚙️16—Libel by agent need be only within general scope of employment.**

   To hold the members of an unincorporated association liable for a defamatory article published by their agent, it is not necessary to show authority, expressed or implied, to the agent to publish the libel; but there must be some evidence from which authority might be implied on the part of the agent to publish the article within the general scope of his employment.

---

⚙️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Libel and slander ⊂⟹86(2)—Pleading ⊂⟹364(6)—Innuendo unnecessary, when words are libelous per se.**

If the defamatory words alleged are actionable per se, no innuendo is necessary, and the allegation by way of innuendo may be stricken from the complaint.

**5. Libel and slander ⊂⟹86(2)—Innuendo proper, where words have both innocent and defamatory meaning.**

Where the words used have two meanings, one of them harmless and the other defamatory, the innuendo may properly point out injurious meaning.

**6. Libel and slander ⊂⟹6(2)—"Crook" applied to person is always defamatory.**

Though the words "crook" and "crooked" have two meanings, one of which is harmless, they have no harmless meaning when they are applied to an individual or to human conduct, but where so applied they charge dishonesty, and are defamatory, within the common understanding of mankind.

In Error to the District Court of the United States for the District of Arizona; David P. Dyer, Judge.

Action for libel by Samuel C. Pandolfo against the Bank of Benson and others. From a judgment for defendants after demurrer to the complaint was sustained, plaintiff brings error. Reversed and remanded, with instructions to overrule the demurrer.

The court below sustained a demurrer to a complaint which alleged in substance that the defendants, consisting of a large number of banks under the style of Arizona Bankers' Association, together with their secretary, were engaged in the business of printing and publishing a certain book and pamphlet called "Proceedings of the Arizona Bankers' Association," and that the secretary of the association acted with it in printing and publishing and distributing the said book; that said book was published yearly, and was largely circulated by the defendants and was widely read by bankers and business men generally; that the defendants, intending to injure the plaintiff in his good name, fame, and credit, etc., did in May, 1918, in volume 10 of the book or pamphlet known as "Proceedings of the Arizona Bankers' Association," publish, and cause and procure to be published, of and concerning plaintiff a certain false and defamatory and libelous article, as follows: "The Secretary: Mr. President, before you take up any other matters, I have a letter here that I want to read. This is a letter addressed to the Secretary of the Arizona Bankers' Association, and also to the Secretary of the New Mexico Association. It says: * * * 'You have operating in Arizona and New Mexico one Mr. S. C. Pandolfo, who recently moved from San Antonio. I am writing you, gentlemen, with reference to this man Pandolfo, as he is a double-barreled crook. The Commissioner of Insurance of Texas revoked his license outright and refused him the privilege of writing insurance in Texas on account of him continuously violating the law. Our Banking Commissioner forbade state banks from buying paper from this fellow, or in any manner taking obligations in which he was interested. He has crooked more people and in more ways than most any fellow we have ever had in this part of the country in a long time. I believe that it is only just to the bankers in your state that you tip them off to this fellow. If you do not, he is certainly going to hang a lot of them before he is found out. He is one of the crookedest white men I have ever seen.' It is such a letter that I did not care to put it in print and send it out as a warning, as I did not know but what I might be held up and libeled for something, so I thought I would read it here to you all." The complaint further alleged that the defendants well knew that the said statements so published of and concerning the plaintiff were false, and that the same were published with the malicious and express intent of defaming and injuring the plaintiff.

Jones, Hocker, Sullivan & Angert, of St. Louis, Mo., and Alexander, Christy & Baxter, of Phœnix, Ariz., for plaintiff in error.

Thos. Armstrong, Jr., Ernest W. Lewis, and R. Wm. Kramer, all of Phœnix, Ariz., for defendants in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The defendants rely upon the proposition that the limit of liability of members of an unincorporated association is that the members are responsible for tortious acts committed by the society, where it can fairly be assumed that they were within the scope of the purpose for which the organization was formed, citing 5 C. J. 1364, and they contend that no such allegations of fact appear in the complaint. It is argued that the title of the book published by the association shows that it merely sets out an account of the proceedings of the association, and that the publication of such an account is not a matter within the scope of the purpose of the organization upon which all the members can fairly be said to be responsible. To this we cannot assent. We do not find that it appears from the complaint that the publication of the account of the annual proceedings of the association is not a matter within the scope of the purpose of the organization. The complaint distinctly alleges the contrary. It alleges that the association was engaged in publishing the book and distributing the same, that it published one such book 'every year, and that the book in question was the tenth of the series, and even if there were no allegation that the publication of the proceedings was within the scope of the purpose of the organization, it would be but reasonable to hold that the publication of such a volume, issued as it was annually, giving an account of proceedings of the association, was distinctly within the scope of the purpose of such an association. It appears from the complaint that the letter was read by the secretary to the association as part of the proceedings of the association, and the secretary's subsequent remarks indicated his purpose, unless otherwise directed by the association, to publish the letter in the report of the proceedings. The fact that the association approved his action in so doing is clearly deducible from the fact that the letter was embodied in the report, and that the defendant caused the report to be published and circulated. If it was true that the plaintiff had newly arrived and was "operating in the states of Arizona and New Mexico," and was such a man as in the letter he was said to be, the action of an association of bankers of one of those states in giving public warning against him was both appropriate and commendable.

[2] The members of an unincorporated association are liable in their collective capacity for tort (5 C. J. 1369; 25 R. C. L. 67), and they are answerable for damages for libel published by their agent with their authority while the agent is acting within the scope of his employment, just as a corporation is liable under like circumstances (United Mine Workers of America v. Coronado Coal Co., 258 Fed. 829, 837, 169 C. C. A. 549; Buckeye Cotton Oil Co. v. Sloan, 250 Fed. 712, 719, 163

C. C. A. 44; Grand Union Tea Co. v. Lord, 231 Fed. 390, 145 C. C. A. 384, Ann. Cas. 1918C, 1118; Muetze v. Tuteur, 77 Wis. 236, 46 N. W. 123, 9 L. R. A. 86, 20 Am. St. Rep. 115; Cotton v. Fisheries Products Co., 177 N. C. 56, 97 S. E. 712; Morse v. Modern Woodmen, 166 Wis. 194, 164 N. W. 829, Ann. Cas. 1918D, 480).

[3] In Washington Gaslight Co. v. Lansden, 172 U. S. 534, 545, 19 Sup. Ct. 296, 300, 43 L. Ed. 543, where a corporation was sued for libel, the court said:

"We do not mean that in order to render the company liable there must be some evidence of authority, express or implied, given to the manager to publish or to authorize the publishing of a libel, but there must be some evidence from which an authority might be implied on the part of the manager to represent the company as within the general scope of his employment."

The allegations of the complaint in the case at bar bring the action of the secretary within the rule so announced. We think that the demurrer should have been overruled.

We find no error in the rulings of the court below in striking from the complaint as surplusage certain allegations inserted by way of innuendo to explain the meaning of the word "crooked," as used both as an adjective and a verb, and the word "crook"; the allegations being to the effect that those words implied "criminal conduct," "embezzlement," "theft," "larceny," and "violation of criminal laws."

[4] If libelous words are actionable per se, no innuendo is necessary. It is only where the words are not actionable upon their face that the plaintiff must allege by way of innuendo the defamatory sense in which they were used. 25 Cyc. 451; Bourresceau v. Evening Journal Co., 63 Mich. 425, 30 N. W. 376, 6 Am. St. Rep. 320; Broad v. Deuster, 8 Biss. 265, Fed. Cas. No. 1,908; Fredrickson v. Johnson, 60 Minn. 337, 62 N. W. 388; Scofield v. Milwaukee Free Press Co., 126 Wis. 81, 105 N. W. 227, 2 L. R. A. (N. S.) 691; Gosling v. Morgan, 32 Pa. 273; Courtois v. King Paper Co., 172 Mich. 311, 137 N. W. 699.

[5, 6] It is true that where words have two meanings, one of them harmless and the other injurious, the innuendo may properly point out the injurious meaning, and although the words "crook" and "crooked" have two meanings, one of which is harmless, there is no harmless meaning when they are applied to an individual or to human conduct. Where so applied, the common understanding of mankind imputes defamatory meaning to them. Said the court in Midland Pub. Co. v. Trade Journal Co., 108 Mo. App. 220, 233, 83 S. W. 298, 301:

"There is no covert meaning in any of the words used in the headline. They are not ambiguous, and do not require an innuendo to explain the meaning of any of them, or to apply them. Any ordinary reader can understand them. They charge Reifsnider with being 'crooked'; that is, dishonest."

The judgment is reversed, and the cause is remanded, with instruction to overrule the demurrer and for further proceedings.