C. HENNECKE COMPANY, Respondent, v. CARDINAL BOILER & WELDING CORPORATION, Appellant.

*April 6—May 1, 1962.*

494

For the appellant there was a brief by *Ray P. Wherry,* attorney, and *Carlton Roffa* of counsel, both of Milwaukee, and oral argument by *Mr. Wherry.*

For the respondent there was a brief by *Grootemaat, Cook & Franke,* and oral argument by *Francis R. Croak* and *Robert E. Cook,* all of Milwaukee.

DIETERICH, J. For the purpose of this opinion, we will refer to the plaintiff-respondent as "Hennecke," the defendant-appellant as "Cardinal," and the erecting company as "Otis."

The complaint alleges: That Cardinal on December 3, 1958, offered to furnish to the plaintiff all materials for a coal bunker to be erected at Bong Air Force Base. Cardinal proposed to fabricate the coal bunker according to drawings furnished by Hennecke for the sum of $8,900. Under date of December 3, 1958, Cardinal by letter stated:

"We propose to furnish, knocked down, f.o.b. your truck, all material for the coal bunker for the Bong Air Base, fabricated to your drawings for the sum of $8,900."

Hennecke on December 5, 1958, issued the following purchase order to Cardinal:

"Furnish as per plans and specifications, coal hopper and bin spouts, for the Bong Air Force Base job, for the sum of $8,900, f.o.b. Milwaukee.

" 'It is agreed that the comptroller general of the United States or any of his duly authorized representatives shall, until three years after the final payment under this contract with the government, have access to and the right to examine any directly pertinent books, documents, papers, and records involving transactions related to the contract.' "

The purchase order was accepted by Cardinal on December 8, 1958. Hennecke contracted with Otis to erect the coal bunker.

In June, 1959, after Otis had commenced the erection of the coal bunker, Otis found that Cardinal had not fabricated the steel plates to conform with the plans and specifications and that it was impossible to properly complete the erection of the coal bunker. That the United States government inspectors at the Bong Air Force Base rejected the work which had been done on the coal bunker by reason of the fact that the steel plates supplied were improperly fabricated and compelled Otis to dismantle that portion of the work which had been improperly fabricated. The remodeling and alterations of materials which were required to be made were undertaken by Otis and Otis billed Hennecke $4,842.96, being the cost of remodeling and altering materials which had been fabricated by Cardinal. Cardinal by its answer denied the allegations.

In 1961, the instant action was commenced by Hennecke to recover from Cardinal $4,842.96, which is the sum of money Otis charged to Hennecke for altering the plates to conform with the plans and specifications.

The sole issue presented by this appeal is whether the findings of the trial court were contrary to the great weight and clear preponderance of the evidence.

Mr. Royal Shomperlen, president of Cardinal, testified at the trial, that in June, 1959, he made an inspection of the

bunker. Two or three days later a meeting was held in the office of the Hennecke Company, which was attended by Mr. Shomperlen, representatives of Hennecke, and Otis. The record establishes that the purpose of the meeting was to determine where the fault lay and what best could be done to correct the defective plates. Mr. Shomperlen testified that:

"The . . . agreement was that Otis would make any necessary repairs to the structure to conform to the drawing, so that the plates if they did not conform to the drawing would conform to the drawing. . . . There was a further understanding reached. That at a later date the three parties involved would sit down and determine who was responsible for the costs involved and at that time whichever party was involved, or parties, would pay whatever part of the cost was their responsibility."

Confirmation of that agreement was made by a letter from Cardinal to Hennecke on July 2, 1959, the same day that Cardinal received a payment of $2,500 from Hennecke. Cardinal had already received $5,000 on May 25, 1959, and later received the third and last payment of $1,400 on November 25, 1959.

The plans disclose that the steel plates in question were to be rectangular in shape. Mr. Shomperlen in identifying the photographs testified that he had examined the plates and that the photographs represent the condition of the plates as he found them when he inspected the coal bunker in June, 1959. He further testified that the photographs represent the shape of the structure, at least the lower portion thereof, and that the photographs showed wider gaps in between some of the plates than between others.

The alleged defect in the plates is that they did not form perfect rectangles. The trial court's finding was that Cardinal "did not furnish materials to conform with the plans and specifications in that the upper plates were not squared."

Exhibit 7.

Inside coal bunker looking south.

Mismatched plates in coal bunker.

Cardinal contended that the plates were within the tolerances allowed by A.I.S.C.[1] specifications and the standard commercial tolerances in the trade. Mr. Shomperlen testified, however, that he was not able to find any tolerances in A.I.S.C. nor in the specifications or plans. The record does not contain any proof of what tolerances, if any, were permissible for the fabrication of the plates for the coal bunker. Several witnesses, including Mr. Shomperlen, testified the plates were out of square. However, the plans given Cardinal contained drawings which represented the plates as being rectangles.

"A finding of fact of a trial court made upon conflicting evidence should not be set aside on review if a judicial mind could, on due consideration of the evidence as a whole, reasonably have reached the conclusion of the court below." *Estate of Larsen* (1959), 7 Wis. (2d) 263, 273, 96 N. W. (2d) 489.

The answer by Cardinal did not plead waiver as a defense, nor was waiver made an issue at the trial. The trial court, however, in its opinion stated "that there was no waiver on the part of the plaintiff as to the extra cost for correcting the fabricated steel," and the court's ninth finding of fact was "that there was no waiver on the part of the plaintiff as to the extra cost for correcting the errors in the upper plates."

The question of waiver was presented by both parties. Hennecke contended that "ordinarily questions not raised and properly presented for review in the trial court will not be reviewed upon appeal." *James Employees Credit Union v. Hawley* (1958), 2 Wis. (2d) 490, 497, 87 N. W. (2d) 299. Exceptions have been made to this rule especially where the question was fully argued in the trial court.[2]

---

[1] Steel Construction Manual of the American Institute of Steel Construction.

[2] *Cappon v. O'Day* (1917), 165 Wis. 486, 162 N. W. 655, and *Braasch v. Bonde* (1926), 191 Wis. 414, 211 N. W. 281.

The testimony establishes that Cardinal did enter into an agreement with Hennecke and Otis to make whatever alterations were necessary in the plates and that the issue of liability for damages would be decided after the cost for the extra work was known. With this testimony in the record the finding of fact of the trial court that there was no waiver cannot be said to be against the great weight and clear preponderance of the evidence.

It therefore necessarily follows that the judgment of the trial court must be affirmed.

*By the Court.*—Judgment affirmed. Appellant and respondent having violated Supreme Court Rule 6, sec. 251.26, Stats., for filing improper appendix, no costs are allowed.