LISOWSKI, Respondent, v. CHENENOFF, d/b/a NICK CHENENOFF CONSTRUCTION COMPANY, Appellant.*

*January 4—January 30, 1968.*

* Motion for rehearing denied, with costs, on April 9, 1968.

612

614

616

For the appellant there was a brief by *Phillip Markey* of Milwaukee, attorney, and *Wayne W. Schlosser* of Sheboygan of counsel, and oral argument by *Mr. Schlosser.*

For the respondent there was a brief by *Grootemaat, Cook & Franke,* attorneys, and *Robert E. Cook* and *Thomas J. Drought* of counsel, all of Milwaukee, and oral argument by *Robert E. Cook.*

WILKIE, J.  Both sides seek to have this court overturn what the trial court has done after patiently bringing this lawsuit to judgment, the defendant claiming a perverse jury and numerous court errors that command a new trial, the plaintiff seeking to restore the substantially reduced items of damage in the original verdict.  For purposes of our discussion we will first consider the conten-

tions of the defendant and then the claims of the plaintiff on his motion for review.

Defendant's arguments raise four issues all concerning the basic question of whether or not the verdict should be set aside and a new trial granted:

1. Because the verdict is perverse and reflects passion and prejudice against the defendant;

2. Because of various errors claimed in the special verdict and instructions;

3. Because the court improperly admitted certain exhibits and rejected others;

4. In the interest of justice.

### *Perversity of Verdict.*

Chenenoff's principal contention is that the verdict reflects passion and prejudice on the part of the jury. He bases this contention mainly on the fact that the verdict aggregating $69,277.60 was cut by the court to $21,504.60. The defendant argues "The fact that the trial court saw fit to change, in all, 5 of the 7 damage answers seems adequate proof that the entire verdict was affected by passion and prejudice and was perverse." Yet, the trial court itself was unwilling to concede that the verdict was motivated by passion and prejudice. On motions after verdict the trial court said:

"If the verdict is perverse, and the Court has not concluded it is, the Court has made no conclusion, I think the demeanor of the defendant had quite a bit to do with it, and the record should show during the course of the trial the defendant constantly argued with and instructed his own counsel, that he argued with plaintiff's counsel and the Court, and sat here grimacing, smirking, laughing, throwing up his hands at various statements by witnesses, so that if the verdict is perverse, and I have not so concluded, that the defendant brought much of the perverseness on himself."

A perusal of the record amply supports these remarks of the trial court. On six different occasions the trial court cautioned the defendant about his conduct in court. In addition, the court reprimanded Mr. Markey (defense counsel) on 15 separate occasions for his conduct. One hundred and nineteen objections to Mr. Markey's questions were sustained by the court, of which 41 were leading questions. Time and time again counsel attempted to ask a witness the very same question as had already been answered. Indicative of counsel's conduct is the following comment (in the absence of the jury) made by the court:

"I don't know how many times I advised you to refrain from leading questions. Now, if it continues I will grant a mistrial, but it will be on such terms that you and your client will regret. I must see that other counsel is paid for six or eight days of preparation and trial, plus other terms, so now recall the Jury."

We think that the trial court conducted the proceedings in a manner that was completely fair. The jury awarded substantial and, indeed, what the trial court found to be excessive damages to the plaintiff. It returned a verdict for the plaintiff on each cause of action. But the fact these excessive awards were made does not mean that the verdict is perverse and the result of passion and prejudice. Defendant was found to owe the plaintiff over $10,000 for services rendered and equipment used. He was also found to have defamed the plaintiff to Lisowski's damage in the sum of $60,000. This sum was found to be "grossly excessive" by the trial court in its ruling on motions after verdict, and in conjunction with that ruling the trial court considered and rejected the charge of perversity. The trial court correctly noted that the defendant deservedly brought on himself the disfavor

of the jury and that in returning its verdict the jury was not perverse.

Defendant also complains that certain remarks of the trial court (most of which were precipitated by defense counsel) prejudiced the jury verdict. Most notable is the following remark made by the court in the presence of the jury.

"The Court can take judicial notice of the fact that contractors generally promise things, and in fairness, how can I phrase it—and often do not complete it in accordance with their promise. I think that is a matter of common knowledge to the Court and Jury."

This remark was unprovoked and unwarranted, but taken in context we believe that the comment, if prejudicial, was probably equally damaging to plaintiff. Defendant called Milton Rewey, principal of St. Francis school, and questioned him concerning the reliability of plaintiff as a construction foreman. Testimony was offered to establish that plaintiff was often late in completing certain projects. The court inquired as to the relevancy of this line of questioning. When defense counsel claimed to be attacking plaintiff's credibility, the trial judge made the quoted observation. No objection was made to the remark of the trial judge and when the witness completed his testimony, plaintiff's attorney moved to have his entire testimony stricken from the record because it failed to impeach plaintiff. Defense counsel interposed no objection and the testimony in its entirety was stricken.

Viewed in context with the testimony of Milton Rewey, or for that matter, the entire trial, the remark of the trial judge tends to lose its potentially damaging effect, and consequently we conclude that it does not constitute prejudicial error.

*Special Verdict and Instructions.*

Defendant next contends that questions one through six [1] of the special verdict are defective in form because they assume facts that are not established. More specifically, questions one and two assume that plaintiff performed overtime work, questions three and four assume plaintiff attended school board meetings, and questions five and six assume defendant used plaintiff's tools and equipment. This argument has no merit. The instructions given by the court clearly indicated that the jury was to answer question two only if Lisowski performed overtime services. The instructions also made it clear that the same principle applied to questions four and six. Furthermore, the closing arguments of both counsel covered the point raised by Chenenoff.

[1] Question One: Did the defendant, Nick Chenenoff, agree expressly or impliedly to pay the plaintiff, Ralph Lisowski, overtime wages?

Question Two: If you answer Question One "yes," then answer this question: What sum of money will reasonably compensate the plaintiff, Ralph Lisowski, for unpaid overtime wages?

Question Three: Did the defendant, Nick Chenenoff, agree expressly or impliedly to pay the plaintiff, Ralph Lisowski, for attending school board meetings, for figuring estimates for various construction jobs, and for meeting with the defendant's attorney?

Question Four: If you answer Question Three "yes," then answer this question: What sum of money will reasonably compensate the plaintiff, Ralph Lisowski, for attending school board meetings, figuring estimates, and meeting with the defendant's attorney?

Question Five: Did the defendant, Nick Chenenoff, agree expressly or impliedly to pay the plaintiff, Ralph Lisowski, for the reasonable rental value of tools and equipment furnished by him for use on the defendant's jobs?

Question Six: If you answer Question Five "yes," then answer this question: What sum of money will reasonably compensate the plaintiff, Ralph Lisowski, for the reasonable rental value of tools and equipment furnished by him?

Chenenoff also claims that questions eight (a) and ten (a), and eight (b) and ten (b) [2] are duplicitous since the defamatory statements (both oral and written) grew out of the same facts and circumstances. Consequently, Chenenoff argues, the jury awarded Lisowski double damages for the same loss. Chenenoff is barred from raising this objection at this point because at the appropriate time during the trial he did not object to this phase of the verdict or request questions for the verdict in a form that would indicate such objections.[3] Thus, he waived any error there may have been in conjunction with these questions.

Defendant also objects to the form of the compensatory damage questions in connection with the slanderous and libelous statements because these questions were submitted as "catchall" sums for damages and did not itemize the separate elements, namely, loss of earnings, mental suffering and injury to reputation. Aside from the fact that this error has not been preserved for appeal, it is within the sound discretion of the trial court whether or not itemized questions for unliquidated damages should be submitted to the jury.[4] Furthermore, in the instant case the trial court instructed the jury as to the separate elements of damages.

---

[2] Question Eight (a) At what sum do you assess the compensatory damages to the plaintiff, Ralph Lisowski, as a natural result of the oral charge referred to in Question Seven?

Question Ten (a) At what sum do you assess the compensatory damages to the plaintiff, Ralph Lisowski, as a natural result of the written charge referred to in Question Nine?

Question Eight (b) At what sum do you assess the punitive damages against the defendant, Nick Chenenoff, for making the oral charge referred to in Question Seven?

Question Ten (b) At what sum do you assess the punitive damages against the defendant, Nick Chenenoff, for making the written charge referred to in Question Nine?

[3] *Van Wie v. Hill* (1961), 15 Wis. 2d 98, 112 N. W. 2d 168.

[4] *Johnson v. St. Paul & Western Coal Co.* (1907), 131 Wis. 627, 111 N. W. 722.

The final objection to the special verdict relates to the questions concerning the truth of the slanderous and libelous statements. The original special verdict submitted to the jury contained no questions relating to truth as a defense although the jury was instructed that "no matter how much a citizen alleges that he may be injured by matter concerning him, he has no right to complain insofar as a civil action is concerned if the matter be true in fact." The jury retired at 1:29 p. m. At 2:32 p. m. defense counsel submitted through the clerk a special verdict addendum containing questions relating to the truth of the defamatory statements. Instead of submitting these questions to the jury immediately, the trial court waited until the deliberations were completed at 4:40 p. m., at which time the jury was sent out a second time to answer the truth questions.

Apparently the trial court overlooked the truth questions when the verdict was submitted to the jury.[5] The court could have rectified the oversight by recalling the jury at 2:32 p. m. in the middle of their deliberations, but the judge decided to wait until they completed deliberating.

While this practice of submitting belated questions is unusual and should not be condoned, it is difficult to imagine how defendant was prejudiced in this case. Defendant properly points out that the jurors would have been hesitant to change their answers to the questions in the original special verdict. However, it is difficult to visualize how the truth questions would otherwise influence the original verdict. Moreover, the jurors probably deliberated on the question of truth in their original findings since they were instructed that truth would operate as an absolute defense. This assumption finds

[5] Defendant's proposed special verdict contained a truth question and defense counsel called this to the attention of the court immediately before the jury retired.

support in the fact that the jury deliberated only eleven minutes before returning the amended special verdict.

*Evidentiary Errors.*

Exhibits Nos. 3 and 4 were calendars with notations made thereon by plaintiff showing overtime hours he had worked for defendant. Exhibit No. 5 was a summary and tabulation of Exhibits Nos. 3 and 4. Defendant contends that these exhibits were inadmissible because they did not qualify as business records under sec. 889.25, Stats.[6] Plaintiff testified that each notation was made contemporaneously with the occurrence and on this basis the trial court admitted the records. However, later in the trial defendant produced a handwriting expert who testified that in his opinion the notations were not contemporaneous but were all made on one occasion. This testimony raises a question of credibility [7] regarding the contemporaneity of the notations made by plaintiff on the calendars, one that the jury obviously resolved against

---

[6] Sec. 889.25, Stats., provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of such act, transaction, occurrence or event, if the custodian or other qualified witness testifies to its identity and mode of preparation, and if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility. The term 'business' as used in this section, includes business, profession, occupation and calling of every kind."

[7] The trial court gave the standard instructions on expert testimony and the credibility of witnesses.

defendant. It is not the function of this court to review questions of credibility.[8]

The admissibility of Exhibit No. 5 presents no problem having once concluded that Exhibits Nos. 3 and 4 were proper. Defendant could easily verify the accuracy of the summarization. Indeed, it was defendant's attorney who requested the preparation of Exhibit No. 5.

Defendant offered Exhibit W, the pay ledgers for years 1962 and 1963, which included the hours worked and wages paid of all his employees. The court admitted only that portion of the exhibit relating to plaintiff's payroll records. Defendant argues that Exhibit W in its entirety is highly relevant as it would corroborate the testimony of defendant that during 1962 and 1963 none of his employees were paid overtime wages. Consequently, as foreman, plaintiff's claim for overtime wages would be incredible.

The difficulty with the syllogism is that it assumes that plaintiff, as foreman, at all times worked with subordinates. The record does not establish the validity of this assumption.

Moreover, the introduction of all the payroll records of all the employees over a period of two years could have been unbearably time consuming and confusing to the jury. The probative value must be balanced against these and other prejudicial factors and the trial judge is given wide discretion in these matters.[9] The trial court did not abuse its discretion here.

Chenenoff claims two errors on evidentiary matters concerning Lisowski's cause of action for slander and

[8] Exhibits Nos. 3 and 4 would also be admissible (assuming contemporaneity) under the past-recollection-recorded exception to the hearsay rule. McCormick, *Evidence* (hornbook series), p. 590, sec. 276, *et seq.; Nehrling v. Herold Co.* (1902), 112 Wis. 558, 88 N. W. 614. Thus, defendant's argument that the calendars were not prepared in the ordinary course of business becomes academic.

[9] *State v. Smith* (1967), 36 Wis. 2d 584, 153 N. W. 2d 538; American Law Institute, *Model Code of Evidence*, p. 180, Rule 303.

libel. Exhibit S is a notarized statement signed by Gene Snopek, custodian of St. Francis high school. In essence, in the statement Snopek claims to have made an inquiry of plaintiff regarding the whereabouts of the desk and plaintiff denied having any knowledge of the missing desk. Chenenoff argues that the document is relevant because it tends to show that Snopek was of the same opinion as Chenenoff that the desk was missing.

Assuming, arguendo, that the document is relevant, the trial court's refusal to admit the statement can hardly be prejudicial to defendant. Mr. Snopek was permitted to testify as to the contents of the statement and consequently the document would have been merely cumulative with little or no probative value.

Defendant also argues that the court improperly rejected Exhibit Z–3, a daybook of the St. Francis police department which contained a complaint by Mr. Snopek of the theft of a desk. The exhibit was offered as proof of prior publication in an attempt to mitigate damages. The offer of proof indicates that Snopek merely complained that *a desk* was missing. The complaint did not mention plaintiff's name as the thief or even as a suspect. Snopek's complaint is not a prior publication and the exhibit was properly rejected.

### *New Trial in the Interest of Justice.*

Defendant urges this court to set aside the verdict and order a new trial in the interest of justice.[10] The principal reason given by Chenenoff in urging such discretionary reversal is his claim that the issue of privileged communications has not been litigated.

The general rule is that communications made to law enforcement officers for the purpose of bringing a criminal to justice fall within the ambit of conditionally privileged statements, provided, however, that the damaging

[10] Sec. 251.09, Stats.

remarks are made in good faith without malice.[11] The jury was not instructed on the question of malice. Indeed, defendant never raised the question of qualified privilege.

Assuming, arguendo, that defendant had properly raised this issue, we are not convinced that the jury would have found the defamatory remarks to have been made in good faith for the purpose of instituting criminal proceedings.

It will be recalled that defendant prepared a statement for Mr. Scheiding, an employee, to sign which charged plaintiff with the theft of the desk. Scheiding refused to verify that the statement was true. Scheiding testified that defendant had ordered him to have the desk removed. He also testified that after he refused to sign the accusation, he was fired by defendant. Thereafter, defendant took the unsigned statement and presented it to the St. Francis police and also made oral accusations against Lisowski charging him with theft.

In addition, the fact that defendant refused to appear at the district attorney's office on several occasions after he filed an initial complaint tends to indicate the lack of a sincere desire to have the police prosecute the matter. Finally, the mere fact that the St. Francis police never issued a criminal complaint, and immediately released plaintiff, indicates that the accusations were completely groundless.

The foregoing facts would be sufficient to permit the jury to conclude that the defamatory statements were not made in good faith.

We are not satisfied that even if defendant had properly raised the issue of privileged communications the result would have been any different. Viewing the case as a whole, we are not convinced that there has been a

[11] *Otten v. Schutt* (1962), 15 Wis. 2d 497, 504, 113 N. W. 2d 152; *Hathaway v. Bruggink* (1919), 168 Wis. 390, 170 N. W. 244.

miscarriage of justice.[12] Indeed, the court is convinced that the defendant has had a full and fair consideration of the entire controversy.

### Plaintiff's Motion for Review.

Two issues are raised by plaintiff's motion for review attacking the trial court's action in reducing certain parts of the damage award. Specifically, the two issues are:

1. Did the trial court abuse its discretion when it refused to conform the *ad damnum* clause to the uncontroverted testimony concerning the rental value of plaintiff's tools?

2. Did the trial court abuse its discretion by reducing the awards in connection with the slanderous and libelous statements for compensatory and punitive damages?

### Award for Rental Value of Tools.

In his complaint, plaintiff sought damages in an amount of $427 for the reasonable rental value of tools and equipment. The uncontroverted testimony of expert witness Arthur Haas indicated that the reasonable rental value substantially exceeded the $427 figure alleged in the complaint. No objection was taken at the trial to this testimony. At the conclusion of the testimony, plaintiff moved to conform the *ad damnum* clause as to this item with the uncontroverted testimony and defendant objected. The court overruled the objection and permitted the amendment. The jury found for plaintiff in the amount of $3,200.

On motions after verdict, the trial court retreated from its original position:

---

[12] *Wojkiewicz v. American Family Mut. Ins. Co.* (1967), 33 Wis. 2d 351, 147 N. W. 2d 249; *Mack Trucks, Inc., v. Sunde* (1963), 19 Wis. 2d 129, 119 N. W. 2d 321.

". . . At the conclusion of the trial plaintiff asked that the complaint be amended to change the prayer for relief in that regard to $2,925.50. The Court granted that motion. In retrospect the Court feels it was in error in granting such motion. While objection was made, it was made as follows: 'Mr. Markey: I think it is a little late for that. We responded only to the matters in the complaint.' It is the Court's opinion that the defendant could well have been taken by surprise in that as a matter of strategy and practicality he might have decided not to defend against a $427.00 item, but would have done so if he had known it was to amount to $3,000.00. Question Six of the special verdict will then be changed by the Court from $3,200.00 to $427.00."

Sec. 263.28, Stats., permits the trial court to conform the pleadings to the actual proof provided the variance is not material. That section provides:

"**Variances, materiality.** (1) No variance between the allegation in a pleading and the proof shall be deemed material unless it misleads the adverse party to his prejudice. Whenever it shall be proved to the satisfaction of the court that a party has been so misled, and in what respect he has been misled, the court may order the pleading amended upon such terms as may be just.

"(2) When the variance is not material, the fact shall be found in accordance with the evidence and the court may order an amendment without costs."

*Zelof v. Capital City Transfer, Inc.*[13] is strikingly similar to the present appeal. In *Zelof* the *ad damnum* clause sought $1,070.33 and the proof on trial established liability at $3,000. On motions after verdict, the trial court granted the variance but two weeks later, *sua sponte,* reversed its prior decision and denied the amendment. On appeal, this court reversed and reinstated the order amending the *ad damnum* clause:

". . . Such a variance under sec. 263.28, Stats., is not deemed material unless it misleads the adverse party to

---

[13] (1966), 29 Wis. 2d 384, 139 N. W. 2d 1.

its prejudice, and it must be proved to the satisfaction of the court that a party has been so misled and in what respect he has been misled." [14]

The burden of proving prejudice or surprise is on the defendant. The record is devoid of any such evidence. The trial court speculated that the defendant "could well have been taken by surprise." Consequently, the trial court abused its discretion when it reversed its prior order granting the variance, and the answer to question six of the verdict should be reinstated.

### Compensatory Damages.

The trial court found the awards for the slanderous and libelous statements excessive both as to the sum of $10,000 for compensatory damages and as to the sum of $50,000 for punitive damages. He reduced them to a total of $5,000 and $10,000 respectively. He made these determinations under the authority of the *Powers* rule, [15] and thus these determinations are binding on us unless he abused his discretion in examining the awards, finding them excessive, and fixing lower figures he believed to be reasonable. [16]

The entire uncontradicted and uncorroborated testimony bearing on compensatory damages appears during the questioning of Lisowski:

"*Q.* Can you tell us how, if it has, how this accusation, that you were a thief, has affected you mentally, physically or financially, Ralph; tell the Jury just the way you told me. *A.* A man has to go—(breaks down crying)— I am sorry—

---

[14] *Id.* at page 391.

[15] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

[16] *Boodry v. Byrne* (1964), 22 Wis. 2d 585, 126 N. W. 2d 503; *Lewandowski v. Preferred Risk Mut. Ins. Co.* (1966), 33 Wis. 2d 69, 146 N. W. 2d 505.

"Court: We will take a few minute recess, and the Jury may retire.

". . .

"Court: You may proceed, Mr. Cook.

"Mr. Cook:

"Q. Ralph, prior to this incident had anyone ever accused you of committing a crime? A. No sir.

"Q. Tell us about how this affected you. A. Well, I couldn't make a livelihood for my family. I worked somewhere two or three days and I would quit and go somewhere—

"Mr. Markey: Could we have the year and month.

"Court: Ask him when, counsel.

"Mr. Cook: Q. I am referring to subsequent to April 17th, 1963.

"Mr. Markey: That covers to this year, four years.

"Court: Tell us when this happened. A. It was after this incident of quitting Mr. Chenenoff.

"Mr. Cook:

"Q. Tell us for how long a period of time you were unable to work? A. Off and on I worked probably a couple days, I couldn't tell you which months they were.

"Q. How long did this feeling persist; how many months, days or years?

"Mr. Markey: We object to any feeling. We are only concerned with when and where he was unemployed.

"Court: That is the exact question. Objection overruled.

"Mr. Cook: Q. How long did this feeling persist, Ralph? A. I would say approximately a year.

"Q. Did this make you nervous? A. Yes sir.

"Q. How did it affect your family life? A. I had to send my wife out of the house in the morning.

"Q. Why was that? A. I was afraid of my own actions.

"Q. Did you ultimately get another job and start working? A. Yes, I started working for C. G. Schmitt Company.

"Q. When did you start working for them? A. Probably November or January, down in there somewhere.

"Q. And who are you working for now? A. Superintendent for Hunzinger Construction Company."

From this testimony the trial court concluded that, at best, plaintiff was unemployed for six months. He now

is employed as a construction foreman for a Milwaukee contractor. Loss of wages alone (assuming six months' unemployment) would amount to about $3,640 after deductions. The jury was also instructed to consider impairment of reputation and credit standing, and any mental anguish that plaintiff may have suffered.

In view of the limited, vague and uncorroborated testimony bearing on these factors, and in view of the nominal publication that the damaging statements received, we believe that the trial court did not abuse its discretion in cutting in half the award for compensatory damages. The sum of $5,000 ($1,500 for the one statement and $3,500 for the other) is within the range of reasonably debatable amounts that the jury could fairly return.

### Punitive Damages.

As the trial court correctly instructed the jury, punitive damages are assessed not to compensate the injured party but as a punishment to the tortfeasor and as a deterrent to others.[17] Additionally, we have held that the *Powers* rule is applicable to punitive damages and thus, the trial court has the authority to reduce such damages to that amount it considers as fair and reasonable.[18]

In its memorandum opinion the trial court, in reviewing the jury's award for punitive damages, stated:

". . . Consideration must be given to the wrongdoer's ability to pay, the grievousness of his acts, the degree of malicious intention and potential damage which might have been done by such acts, as well as the actual damage. Testimony as to the defendant's financial condition is somewhat sketchy, but it does show at times he had $100,000 or so in his checking account, owned half a

[17] *Malco v. Midwest Aluminum Sales* (1961), 14 Wis. 2d 57, 109 N. W. 2d 516; *Kink v. Combs* (1965), 28 Wis. 2d 65, 135 N. W. 2d 789.

[18] *Malco v. Midwest Aluminum Sales, supra,* footnote 17, at page 65.

dozen homes, and owned an apartment building. The Jury could well infer that he was a man of some means. However, considering all of the factors mentioned above, and the defendant's financial condition, the Court is of the opinion that $50,000.00 is grossly excessive."

The trial court then concluded that an award for punitive damages in the amount of $10,000 "would be reasonable."

We are satisfied that there was no abuse of discretion on the part of the trial court in finding the jury's award of $50,000 grossly excessive and in finding $10,000 to be a reasonable sum. Although the circumstances of each case must be considered on their own and a verdict in one case cannot be appropriately compared with a verdict in another except in a very general way,[19] the fact is that we can find no Wisconsin case in which our court has upheld a punitive damages award for as much as the jury award here.[20]

Moreover, since punitive damages are assessed for punishment only, sec. 942.01, Stats. (criminal libel) which provides for a maximum penalty of $1,000, is certainly relevant.

Lisowski cites cases from other jurisdictions sustaining punitive damages ranging from $60,000 to $500,000. However, for the most part these cases involve large corporations (particularly publishers) whose financial worth can easily tolerate substantial verdicts. In contrast, the testimony bearing on defendant's net worth in the instant case, although rather incomplete, indicates that the $50,000 award for punitive damages would be severely

[19] *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. 2d 487, 493, 120 N. W. 2d 692.

[20] *Kink v. Combs, supra,* footnote 17, $7,500 sustained; *Malco v. Midwest Aluminum Sales, supra,* footnote 17, $7,500 sustained; *Morse v. Modern Woodmen of America* (1917), 166 Wis. 194, 164 N. W. 829, $5,000 excessive.

felt. There was testimony that the size of defendant's checking account fluctuated between several thousand dollars and close to $100,000, and that the average amount held in the account was $20,000–$30,000. There was also testimony to the effect that defendant was the owner of six homes and an apartment building and that he had negotiated an unsecured loan for $85,000 in 1964, based solely on a financial statement. Yet the financial position of the defendant could well have been a factor properly influencing the trial court to reduce the verdict.

### Double Costs.

On October 27, 1967, plaintiff moved to strike defendant's brief and, in the alternative, tax double costs, because of certain rule violations relative to printing and preparation. The motion was denied by this court on December 14, 1967, granting plaintiff the right to renew his motion with respect to taxation of costs. Lisowski has renewed that motion.

Appellant's appendix (161 pages) is burdened with repeated instances of complete question and answer quotations in violation of sec. 251.34 (5) (c), Stats., which requires paraphrasing of the reporter's notes. In addition, and in violation of the same section, appellant has deleted considerable testimony without indicating such deletions by way of asterisks. Finally, defense counsel has seen fit to interject editorial comments (not in the record) at various points in his appendix.

In an effort to defend his appendix, defendant's counsel contends that conflicting testimony and numerous colloquies between court and counsel make it difficult to put these excerpts of the record in narrative form. The fact that it may be difficult does not justify direct quotation from the record. The requirement of testimony in narrative form was established to minimize the length

of the appendix. As a result of the rule violations in compiling appellant's appendix, respondent's counsel has been forced to do much additional work in preparing his brief and supplementary appendix.

Chenenoff's brief contains a number of statements not supported by the record. The statement of facts is replete with minutia which add little to the disposition of this confusing appeal.

In sum, the imposition of double costs is warranted for Chenenoff's repeated violation of rules that are designed for the full and fair presentation of cases on appeal.[21]

As one further observation we note that the trial court, although reducing the jury verdict, did not follow the form of awarding a new trial and giving the plaintiff an option to remit the difference between the jury award and the court's determination.[22] On remand the trial court should revise the judgment accordingly in connection with reinstating part of the award as ordered by this court.

*By the Court.*—Judgment modified so as to reinstate jury verdict of $3,200 for damages due to rental value of tools and equipment, and, as modified, affirmed; cause remanded for further proceedings not inconsistent with this opinion. Double costs on this appeal awarded to respondent.

---

[21] For other cases in which double costs have been allowed, *see Dutcher v. Phoenix Ins. Co., ante,* p. 591, 155 N. W. 2d 609, and cases cited therein at p. 610.

[22] *Powers v. Allstate Ins. Co., supra,* footnote 15; *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. 2d 568, 117 N. W. 2d 660.