MALCO, INC., Respondent, v. MIDWEST ALUMINUM SALES, INC., Appellant.*

*May 4—June 6, 1961.*

* Motion for rehearing denied, without costs, on October 3, 1961.

58

For the appellant there were briefs by *Snyder, Mantyh & Arndt* of Milwaukee, and oral argument by *E. H. Snyder.*

For the respondent there was a brief and oral argument by *Jack J. Gimbel* and *Seymour Gimbel,* both of Milwaukee.

HALLOWS, J. The first question is whether the trial court erred in changing the answer to the first question in the verdict. The question inquired, "What sum, if any, do

you find due to plaintiff from defendant by virtue of the contract of February 15, 1958?" The jury answered "None." The trial court changed this answer to $993.95 stating, in its opinion, the jury probably became confused by the reply and the counterclaim in answering the question because it was clear the uncontradicted evidence revealed a balance due of $993.95. The trial court thought to deny the plaintiff any recovery and to allow the defendant to prevail on the first counterclaim would result in a double recovery by the defendant. We do not agree. Double recovery depends upon whether the amount determined by the jury on the first counterclaim in relation to its answer to the first question is sustained by the evidence. The instructions on the first question by the trial court were not very helpful to the jury. They were very short and only rephrased the question. The trial court stated, in its opinion, that the defendant breached the contract in September of 1958, and because of this, the contract was terminated by Scheer. Whether the defendant breached the contract was a disputed issue and the trial court could not, as a matter of law, determine it. Whether the alleged breach constituted grounds for the plaintiff to terminate the contract was assumed by the trial court.

The first question was agreed to by the parties. On the theory the contract was terminated in September, 1958, the question would not be intelligent to the jury, as there was no sum due on the contract for purchases prior to October 1, 1958, and since there could be no overcharges based on an existing contract after the date of its termination, there would be no disputed issue concerning the amount of the balance to go to the jury. The question inquired, "What sum, if any, was due on the contract?" Why "if any," if the amount was undisputed except to inquire whether any amount was due, i.e., whether the defendant was liable and had an obligation on the contract to pay it? This broad question as submitted to the jury was, in effect, asking for a general

verdict on the issue of the defendant's liability. In view of the manner in which the issue was submitted, the jury's answer that nothing was due the plaintiff on the contract necessarily means that the defendant did not breach the contract and the amount of the overcharges paid by the defendant exceeded any balance due on the contract. Such view is sustained by the evidence and the answer of $2,500 to the first counterclaim question. We hold, therefore, the court was in error in changing this answer and it should be reinstated.

Appellant further claims it was error for the trial court to reduce the amount of damages for the plaintiff's breach of the contract from $2,500 to $1,576. Because the court concluded the defendant breached the contract, it calculated damages to October 1, 1958. This was error. There is evidence the defendant had been overcharged $3,851 from February 15, 1958, to June, 1959, on the basis of what the plaintiff had charged Gem, a competitor of defendant. To October 1, 1958, such overcharges amounted to $2,808; the respondent claims $2,532. The $2,500 damages assessed by the jury are supported by credible evidence. Comparing this answer with the answer to the first question in the verdict, the jury must have reasoned defendant was entitled to $3,851 and offset it by the $993.95 due to the plaintiff and thus arrived at its round figure of $2,500. This reasoning supporting the verdict acknowledges the jury made the setoff of the claims of the parties, which was only natural for lay persons to do if not instructed otherwise. The result is not a double recovery by the defendant. We must review the case on the theory upon which it was submitted and apparently understood by the jury. Normally, of course, setoffs are not made by the jury, but here the issues were so framed and since the answers and the net result find support in the evidence, they should stand.

The jury found the plaintiff's letter was false and tended to injure the defendant in the conduct of its business. Plaintiff argues its letter was not libelous and was a qualified privileged communication. The trial court, in its opinion, held the letter was libelous *per se*. No appeal has been taken or motion to review made by the plaintiff. This question is not properly before us.

The final contention of the defendant is a jury verdict for punitive damages is not subject to modification by the trial court unless there is a showing of passion and prejudice, or that the verdict is not the result of an honest exercise of judgment in which event the power of the trial court is limited to reducing the punitive damages to $1, or the granting of a new trial, or no punitive damages. No such finding was made. The trial court found only the verdict was excessive. Respondent's position is the *Powers* rule [1] should be applied to punitive damages as it is to compensatory damages.

The prior cases of this court are somewhat in conflict and show a development in the law of the courts' supervisory power over punitive damages which has not yet reached the point of clarity or certainty. Punitive or exemplary damages, long known in the law of intentional or wilful torts, are imposed as a punishment of the wrongdoer and as a deterrent to others. Their assessment lies entirely in the discretion of the jury, not in any right of the one wronged.[2] Even though the evidence may sustain exemplary damages, still if the jury does not award them, it is not error.

[1] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393.

[2] *Robinson v. Superior Rapid Transit R. Co.* (1896), 94 Wis. 345, 68 N. W. 961; *Tilton v. J. L. Gates Land Co.* (1909), 140 Wis. 197, 121 N. W. 331; *Eggett v. Allen* (1903), 119 Wis. 625, 96 N. W. 803; *Topolewski v. Plankinton Packing Co.* (1910), 143 Wis. 52, 126 N. W. 554.

The problem arises when the jury does award punitive damages which the trial court believes to be excessive. In *Luther v. Shaw* (1914), 157 Wis. 234, 147 N. W. 18, a flat reduction of punitive damages made by the trial court was affirmed. The court pointed out the court's revisory power was necessary for the reason that exemplary damages rested upon a vague and immeasurable basis but would rarely exercise the power on the ground of excessiveness. Based on the difference in the jury's function or duty to grant punitive damages as distinguished from compensatory damages, the court in *Manol v. Moskin Bros., Inc.* (1930), 203 Wis. 47, 233 N. W. 579, was of the opinion that when the trial court reduced the punitive damages awarded by the jury from $5,000 to $3,000, which was apparently the highest amount which a jury would, in the opinion of the court, be warranted in assessment thereof and gave the plaintiff the option to take judgment, it was error and required a new trial on the theory that the allowance of punitive damages is wholly within the discretion of the jury.

The language in *Manol* led to the belief trial courts had no right to reduce the amount of punitive damages. However, in *Lehner v. Berlin Publishing Co.* (1933), 211 Wis. 119, 246 N. W. 579, it was stated the court had the power to grant a new trial if punitive damages were excessive. The opinion goes on to state, however, an option for a new trial might be given to the plaintiff or permit him to accept the smallest amount of punitive damages which might be assessed by the jury and because punitive damages were discretionary with the jury, the amount fixed should be $1 or some other nominal amount. The court here was attempting to apply to punitive damages the then rule as to plaintiff's options applicable to compensatory damages and explained *Luther's* flat reduction to an amount considered by the court reasonable as being decided before the option rule had been definitely developed for compensatory damages.

Trial courts continued to reduce excessive punitive damages to a reasonable amount and to give the plaintiff an option of having a new trial. In *Asplund v. Palmer* (1950), 258 Wis. 34, 44 N. W. (2d) 624, the trial court reduced punitive damages from $5,000 to $4,000, which was affirmed because no motion to review the ruling was made. The court pointed out the amount was not so large as to satisfy the court it was not the result of an honest exercise of judgment. This is another way of saying, although the verdict was excessive it was not the result of passion or prejudice requiring a new trial. In the recent case of *Gladfelter v. Doemel* (1958), 2 Wis. (2d) 635, 87 N. W. (2d) 490, the amount of punitive damages was in question and was left undisturbed by the trial court. On appeal, we affirmed, quoting *Luther v. Shaw, supra*.

In *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, we changed the rule of options as applied to compensatory damages and allowed the trial court to determine what it thought to be a reasonable sum and to grant the plaintiff the option to accept it or have a new trial. It seems to us that once the jury has decided in its discretion to award punitive damages, the amount thereof must be subject to the control of the court. True, the jury need not award any punitive damages, but having done so, the amount thereof should be subject to the court's revision in the same manner as compensatory damages. It is not logical to say excessive punitive damages cannot be reduced by the court to a reasonable amount because the jury had the power to deny any amount. In such cases, the fact is the jury exercised its discretion and made an excessive award of punitive damages. We hold that the *Powers* rule extends to punitive damages and a trial court has the power to reduce the amount of punitive damages to what it determines is a fair and reasonable amount for such kind of damages. This extension of the *Powers* rule to punitive damages is urged

in recent legal literature. See Ghiardi, Exemplary or Punitive Damages in Wisconsin, 1 Wisconsin Continuing Legal Education (1961), 69. Also on the problem of punitive damages, see Wickhem, The Rule of Exemplary Damages in Wisconsin, 2 Wisconsin Law Review (1923), 129.

In reducing the punitive damages from $7,500 to $500 and granting the defendant on its counterclaim the option of a new trial on that issue, the trial court stated the punitive damages were excessive because (1) they exceeded the compensatory damages by 15 times, (2) no special damages were proven, and (3) the defendant purchased the business from the plaintiff for $907.25. These reasons are not convincing. There is no arbitrary rule that punitive damages cannot equal 15 times the compensatory damages. In *Maxwell v. Kennedy* (1880), 50 Wis. 645, 7 N. W. 657, this court did state in slander cases, compensatory and punitive damages were inseparably blended and punitive damages are dependent upon the compensatory and must be proportioned, and mitigation applies equally to both. This was said concerning proof of bad character or reputation. Such evidence bears directly both on malice and on the extent and degree of the injury. We have no such problems here. The test of excessiveness does not necessarily depend upon some arbitrary proportion. Compensatory damages are given in attempt to make whole the damage or injury suffered by the injured party. Punitive damage is given on the basis of punishment to the injured party not because he has been injured, which injury has been compensated with compensatory damages, but to punish the wrongdoer for his malice and to deter others from like conduct. Punitive damage ought to serve its purpose. Consideration should be given to the wrongdoer's ability to pay and the grievousness of his acts, the degree of malicious intention, and potential damage which might have been done by such acts as well as the actual damage.

The testimony shows the plaintiff's net worth was $100,000, and its annual sales amounted to $2,000,000. This case presents a picture of a creditor, unsuccessful in collecting a disputed bill of approximately $1,000, threatening and then maliciously attempting to destroy the business reputation of his debtor. Instead of using the legal remedies available for the collection of a debt, the plaintiff took upon itself a vindictive means to destroy his debtor. The lack of special damages was not due to any lack of malice on the part of the plaintiff. It ill becomes the plaintiff to argue the defendant was not hurt much. The argument that the defendant purchased the business for $907.25 is not convincing. The value of defendant's business was not only the assets purchased but the intangible good will which the defendant had built up during the existence of the contract and its ability to do business successfully. The worth of plaintiff's business is but another phase of the argument that punitive damages must be in proportion to compensatory damages. We are not convinced that $500 punitive damages are reasonable and $7,500 are excessive. The jury verdict should not have been modified.

*By the Court.*—Judgment reversed, with instructions to reinstate the verdict and grant judgment accordingly.

BROADFOOT and CURRIE, JJ., dissent.