RE-TRAC CORP., a corporation, Plaintiff,

v.

J. W. SPEAKER CORP., a corporation, Defendant.

No. 60-C-20.

United States District Court
E. D. Wisconsin.

Dec. 21, 1962.

---

7. Mahfouz v. United Brotherhood of Carpenters, etc., 117 So.2d 295, La.App., 2 Cir. (1959).

James Buchbinder, Edward D. Schneiderman, and Burton A. Strnad, Milwaukee, Wis., for plaintiff.

Edward H. Borgelt and Richard E. Sommer, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This is an action for conversion wherein plaintiff seeks to recover compensatory damages in the amount of $4,632 and punitive damages in the amount of $14,000. Defendant denied the wrongful taking, raised an issue as to the jurisdiction of the court for lack of jurisdictional amount, and pleaded a counterclaim in the amount of $25,000. The cause was tried to the court and submitted on post-trial briefs.

Plaintiff, Re-Trac Corp., formerly known as the Mosby Mirror Corporation, is a Minnesota corporation. Defendant, J. W. Speaker Corp., hereinafter called "Speaker," is an Illinois corporation having a place of business at Milwaukee, Wisconsin.

During the spring of 1957, the parties entered into negotiations concerning the manufacture of a retractable side view truck mirror of plaintiff's design, known as the Mosby mirror. A letter to plaintiff written by Speaker's president, John W. Speaker, on June 10, 1957, sets forth the agreement then arrived at by the parties. As a unit price for the manufactured product, Speaker quoted a manufacturing cost of $12 per pair for 500 pairs of mirrors, plus a 25 cent optional charge per unit, and 8 per cent federal excise tax on the transaction. Additionally, plaintiff was to pay the amount of $2,435 for certain tools, dies, and patterns needed in the manufacture of the mirrors according to an enclosed, detailed quotation. Terms were to be net, check with order, f. o. b. Milwaukee, Wisconsin.

The detailed quotation for tools, dies, and patterns to be purchased by plaintiff was subsequently changed to include other items of a total value of $4,632. This transaction is evidenced by a detailed Speaker invoice, No. 4786, showing a "Date Shipped" as October 31, 1957, and indicating a sale of the items listed to the Mosby Mirror Corporation.

Shortly after plaintiff's first sales of the manufactured mirrors in the fall of 1957, it was found that certain parts of the mirror assembly concerned with the retractability feature did not suitably perform the function expected of them. This defect involved a ratchet mechanism consisting of an indented male part which engaged a corresponding female member in a Y-form assembly. Use of an aluminum alloy of insufficient tensile strength resulted in the early deterioration of these parts. This condition was corrected by the insertion of a copper spring "detent" washer between the female and male parts, designed, engineered, and procured at Speaker's expense.

Responsibility for the use of the inadequate alloy, which resulted in manufacturing economy, is disputed. Plaintiff was concerned with maximum saving

in production costs and approved use of the aluminum alloy as more economical than use of steel in these parts. It had had little prior manufacturing knowledge and sought and relied on the experience and advice of Speaker as to sales and merchandising practices as well as to manufacturing details. In this enterprise, plaintiff had furnished a rough design of its mirror from which a marketable product ultimately was developed and produced. Plaintiff's approval was obtained by Speaker for the various steps in the manufacture, including the making of the changes to cure the defective ratchet mechanism which had functioned properly on the original model.

Speaker's president wrote to plaintiff on November 1, 1957, that Speaker had to make changes to produce a "good job," and claimed that the company had "donated" about $3,800 on the production order. It appears from this letter that Speaker intended to go ahead with further improvements in anticipation of further production orders for the Mosby mirror. In a letter dated November 13, 1957, Speaker's president informed plaintiff that the necessary washer was being made. The letter continues:

" * * * I just thought I would let you know and we will try everything possible to satisfy you. However, it is the foundry's fault and we, of course, have to absorb all the assembling costs and everything. So the first 500 pairs of mirrors will be so dear to us that I loathe to even look at them."

Plaintiff testified that it relied on assurances from the foundry as to the suitability of the aluminum alloy in approving its use. In this connection, plaintiff wrote to Speaker on December 3, 1957, concerning the delay and expense caused by the defect and the possibility of reimbursement for plaintiff and Speaker by the foundry. In this letter plaintiff also referred to possible future production of a new model, and that it looked forward to a discussion with Speaker concerning details of charges and manufacturing costs. In an earlier letter of November 5, 1957, plaintiff expressed gratification with the experimentation Speaker had undertaken and inquired into production costs stating:

" * * * As we contemplate future production and changes in this model the cost of the tools and dies will have to necessarily be considered. That is why I want to acquaint myself with this as much as I can."

Speaker offered proof of its various expenditures relating to this production order, such as the number of hours its employees spent in seeking and obtaining a solution to the problem of the defect and the cost of materials necessary to the change. Additionally, Speaker testified to the cost of the design and application of reflective markings on the mirror head.

Ultimately Speaker manufactured 565 pairs of Mosby mirrors for plaintiff at an adjusted cost of $13.50 per pair plus federal excise tax. By April 1, 1958, plaintiff had paid in full all charges billed to it by Speaker, including those for the items listed on Invoice No. 4786, in a total amount of $12,735.67.

■ After completion of the production order of 565 pairs of mirrors, Speaker undertook certain steps relating to the improvement of the Mosby mirror for future production. These are shown by engineering drawings of parts of the assembly dated March 20, 1958, and manufacturing quotations of parts dated March 3, 1958. Speaker has also offered minutes of a meeting, dated April 1, 1958, which indicate that it was attended by the parties and dealt with details of future production runs. The court finds that it has not been shown that these steps were undertaken at the request of plaintiff—and plaintiff categorically denies such a request, that plaintiff agreed to the matters set forth in the minutes, or that plaintiff agreed in writing or otherwise to place any future production orders with Speaker.

On June 2, 1958, plaintiff made demand upon Speaker for the release of the tools,

dies, and patterns as listed on Speaker Invoice No. 4786. Speaker refused to release the property for the reason that anticipated future production orders had not materialized. Subsequent to this refusal, Speaker indicated that it would turn this property over to plaintiff on payment of a cancellation charge. Prior to commencement of this suit and the filing of its counterclaim, Speaker did not bill or make demand upon plaintiff for payment of any of the expenses incurred in connection with the production order or preparations for improvement of the Mosby mirror undertaken after completion of the order other than for payment of the agreed unit price.

### 1. Jurisdiction

Jurisdiction of the case is based on diversity of citizenship, § 1332 of Title 28 U.S.C.A., as amended Pub.L. 85-554, § 2, 72 Stat. 415. The sufficiency of the jurisdictional amount has been raised by Speaker in its answer, on pretrial conference, and by motions on the trial. Speaker now contends that it is apparent to a legal certainty from the pleadings, as well as from all the evidence on the trial, that plaintiff could not expect to recover punitive damages in this action in addition to the amount of $4,632 claimed as compensatory damages to reach a total in excess of $10,000.

■■ The good faith of a plaintiff in choosing the federal forum in a diversity case may be challenged by resort to the face of the complaint as well as to the facts disclosed at the trial. St. Paul Mercury Indemnity Co. v. Red Cab Company, 303 U.S. 283, 290, 58 S.Ct. 586, 82 L.Ed. 845 (1938). On challenge to the sufficiency of the jurisdictional amount, the burden is on the plaintiff to persuade the court that it does not appear to a legal certainty that the requisite amount could not be recovered in the action. Barry v. Edmunds, 116 U.S. 550, 560, 6 S.Ct. 501, 29 L.Ed. 729 (1886), and McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

The fact to be determined by the court in this case on the pleadings and the evidence is the reasonableness of plaintiff's expectation to recover punitive damages in an amount sufficient that when said amount is added to the claimed compensatory damages, the total sum would at least exceed $10,000. See Scott v. Donald, 165 U.S. 58, 17 S.Ct. 265, 41 L.Ed. 632 (1897).

■ Wisconsin law permits the recovery of punitive damages in cases of intentional or willful torts. Malco v. Midwest Aluminum Sales, 14 Wis.2d 57, 63, 109 N.W.2d 516 (1961). There is no arbitrary rule by which punitive damages are to be determined in proportion to compensatory damages. Bell v. Preferred Life Assurance Society, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943), and Malco v. Midwest Aluminum Sales, supra at 66 of 14 Wis.2d, at 521 of 109 N.W.2d, where the court notes that in the assessment of punitive damages—

> "* * * Consideration should be given to the wrongdoer's ability to pay and the grievousness of his acts, the degree of malicious intention, and potential damage which might have been done by such acts as well as the actual damage."

■ The instant action sounds in intentional tort and would warrant the award of punitive damages under special circumstances. Mowry v. Wood, 12 Wis. 413 (1860); Johannesson v. Borschenius, 35 Wis. 131 (1874). The allegations of such special circumstances—defendant's malicious, willful, wanton, and reckless disregard of plaintiff's rights in the claimed conversion—render the complaint sufficient upon its face to support the good faith claim of the requisite jurisdictional amount in compensatory and punitive damages.

Without regard to the merits of the punitive damage claim, the court finds that it has not been established on the trial that plaintiff could not have entertained a reasonable expectation of an award of punitive damages at the time

of the commencement of the suit. It is not disputed that at the time of the alleged conversion the parties were potential if not actual competitors in the marketing of truck mirrors. The property withheld by Speaker, although obtainable elsewhere, was specially procured for the manufacture of this product which Speaker undertook for plaintiff and would have been of use to plaintiff which engaged in the production of its mirror after termination of its relations with Speaker.

■ The state of mind of the person responsible for Speaker's conduct in denying plaintiff's demand for the property is an important factor to be established in a claim for malicious conversion. Plaintiff acknowledged that the element of intention became difficult of proof on the death of Speaker's president with whom plaintiff had dealt in these transactions. Plaintiff's failure thereafter vigorously to pursue or prove the claim for punitive damages with circumstantial evidence does not bear on its initial good faith in its ad damnum assertions and does not defeat the court's jurisdiction over the subject matter.

### 2. Admissibility of Deposition of J. W. Speaker

After commencement of this action, plaintiff took the deposition of J. W. Speaker, then president and treasurer of defendant, as an adverse party. At the close of the interrogation, plaintiff's counsel indicated that a continuation of the deposition would follow at a future date "so that we have the list." It appears that counsel was thereby referring to a list of billings for tools, dies, and jigs as found on Speaker Invoice No. 4786. The witness had previously indicated that this listing was not complete. At this point, the examination generally concerned the subject matter of defendant's counterclaim.

Mr. Speaker died about three months after the date of the examination and prior to any continuation or completions thereof. Plaintiff objects to the admission of the testimony on deposition on the ground that it is incomplete; that the witness refused to answer some questions and lacked information to respond to others; that many additional questions were intended to be asked; and that plaintiff's purpose in taking the deposition was for discovery and not for the perpetuation of testimony.

■ The testimony, as far as it goes, was in response to cross-examination. Plaintiff has not indicated with particularity the area and scope of the matter not completely investigated. The court is of the opinion that under the rule favoring the admissibility of evidence in doubtful cases, the testimony of Mr. Speaker on deposition is admissible. See Paul v. American Surety Company of New York, 18 F.R.D. 68 (S.D. Tex.1955). Incompleteness and the freer range of questions and answers for the purpose of discovery are factors bearing on the weight of the testimony and not on its admissibility.

### 3. Conversion

■ Plaintiff paid for the property listed on Speaker Invoice No. 4786. The transaction was designated as a sale on this invoice. There is no evidence that the parties intended that the tools, dies, and jigs should not become the property of plaintiff on full payment therefor. Speaker's refusal to release the property on plaintiff's demand was based on its disappointment in being unable to prorate expenses it had incurred over future orders which did not materialize. Inability to get compensation for certain outlays of money unrelated to the property in issue, for which expenses Speaker had not at this time billed plaintiff, does not justify the withholding of the property on demand.

The court finds that there is no credible showing that plaintiff had agreed to pay cancellation charges to obtain possession of the property for which it had paid. The "page 4" document offered by Speaker as a supplement to its letter of June 10, 1957, allegedly evidencing an agreement as to cancellation charges, bears the date of June 10, 1958. On that

day the parties had concluded the transaction which was the subject matter of the letter of June 10, 1957, and plaintiff had already made formal demand for its property. The discrepancy in dates as well as other matters contained in the supplement, such as a repetition of terms stated in the letter itself and the numbering of the page as a supplement to a one-page letter referring to an enclosure of unnumbered pages, have not been explained. This document cannot serve to establish plaintiff's obligation to pay cancellation charges on withdrawal of its property, particularly since there is no evidence that plaintiff was aware of or had agreed to these terms.

Under these circumstances, Speaker's retention of the property after plaintiff's demand therefor on June 2, 1958, constitutes conversion thereof, entitling plaintiff to recovery of the value of the property plus interest from date of conversion.

At the time of the conversion, the tooling reflected by Speaker Invoice No. 4786 had been in use less than one year. The value claimed therefor by plaintiff—the price it paid for the items—has not been seriously disputed. This value may stand.

■ Speaker challenged certain of the individual charges itemized on Speaker Invoice No. 4786 as constituting billings for services rather than for personal property, susceptible of conversion. These are: Item 00 "Paul Kutshera Eng. Service #5075"; Item 01 "Paul Kutshera Eng. Service #5076"; Item 16 "Instruction Sheet Art Work"; and Item 17 "Plate and Composition on Instruction Sheet," in a total amount of $307. Plaintiff has failed to explain the nature of the property represented by these items which on their face appear to relate to services. The court finds that these items are not the proper subject of a claim for conversion and that the amount which plaintiff claims as compensatory damages in the action must be reduced by their value, leaving an amount of $4,325 as compensatory damages.

■ Plaintiff has not established that Speaker's conduct in the conversion was vexatious or otherwise motivated by malice. Although both Speaker and plaintiff manufacture and merchandise truck mirrors, there was no proof of any business losses or setbacks resulting from the wrongful withholding of plaintiff's property. Speaker's motive was the attempted recoupment of expenses it had incurred. This motive is not synonymous with an evil intent and does not support an award of punitive damages.

4. *Counterclaim for Quantum Meruit*

Speaker contends that both parties were confused as to the subject matter and terms of the manufacturing agreement between them. There having been no meeting of the minds as to the contract, Speaker submits that it may base its request for recovery of certain expenses on a contract implied in law.

■ In respect to the manufacturing order covering 500 odd pairs of mirrors, Speaker's letter of June 10, 1957, sets forth the terms agreed upon, including a unit price for the finished product. There is no provision governing unexpected expenditures to correct defects in the manufactured product. The specifications enclosed with this letter have reference to reflective markings as follows: "Striped with glow crystals (red or amber)."

This manufacturing order was completed and paid for generally in accordance with the agreement. There were modifications in the total number of units produced, in the unit price, and in the number of items, such as tools, dies, and jigs, which plaintiff was required to purchase.

It appears that the matter of future orders may have been discussed between the parties prior to, during, as well as after completion of the manufacturing order for 500 odd pairs of mirrors. It further appears that Speaker believed such orders would follow. There is no evidence, however, as to any terms or as to any agreement being reached to which plaintiff was a party in respect to

an exclusive manufacturing contract or to the award of future orders to Speaker.

A portion of the expenses which Speaker seeks to recover in its counterclaim were incurred incidental to the initial production order for 500 odd pairs of mirrors. These related to the correction of the ratchet mechanism defect resulting from use of an improper alloy and to the application of reflective markings on the mirror head. In view of the conflict as to the responsibility for the defect, Speaker's intention to manufacture a good product for plaintiff, its statement that it had donated a certain amount on this order, and its failure to bill plaintiff for any of the expenses it bore in correction of the defect, it may not be held that the services were rendered or the materials furnished at the instance of the plaintiff and that plaintiff is obligated in law to reimburse Speaker therefor. Further, it appears that the terms of the manufacturing agreement had reference to the reflective markings in the specifications of the product for which a unit price had been agreed upon. Any expenses incurred in this respect must be deemed compensated by receipt of the contract price.

Other items of Speaker's expenses related to proposed improvements in the Mosby mirror assembly and were incurred after completion of the initial and sole production order. It is clear that Speaker anticipated further orders at this time and incurred the expenses in anticipation thereof; and it is contended that it is highly improbable that an experienced manufacturer like Speaker would incur these expenses without having a commitment as to further production orders. But it has not been established that plaintiff requested that these improvements were to be undertaken—in fact, plaintiff categorically denied such a request—or that plaintiff appropriated any benefit from this work to its own use. Further, it has not been shown that plaintiff agreed to place future orders with Speaker or agreed as to the conditions or terms of any such order. Discussions between the parties as to future orders and the mere improbability that Speaker would undertake the improvements without an agreement as to further orders do not serve to establish the existence of such an agreement or the legal obligation of plaintiff to reimburse Speaker for its expenses incurred in anticipation of the orders.

The court finds that Speaker has failed to establish the facts necessary to entitle it to a *quantum meruit* recovery. The counterclaim must be dismissed.

The foregoing decision shall stand as the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

In accordance with these findings and conclusions, the clerk is hereby directed to enter judgment for the plaintiff and against the defendant for compensatory damages in the amount of $4,325, together with legal interest from June 2, 1958; for dismissal of defendant's counterclaim herein; and for plaintiff's costs and disbursements in the action.