Ray C. FAHRENBERG, d/b/a Doc's Camera Mart, Plaintiff-Respondent,

v.

Fred TENGEL, Jr., and Ralph Bremer, Defendants,

Keith KRAUSE, Defendant-Appellant.

Supreme Court

*No. 78–293. Submitted on briefs March 5, 1980.— Decided May 6, 1980.*
(Also reported in 291 N.W.2d 516.)

For the appellant the cause was submitted on the briefs of *Richard E. Reilly* and *Gimbel, Gimbel & Reilly* of Milwaukee.

For the respondent the cause was submitted on the briefs of *Clifford C. Kasdorf, William A. Sowinski, Jr.,* and *Kasdorf, Dall, Lewis & Swietlik, S.C.,* of Milwaukee.

SHIRLEY S. ABRAHAMSON, J. This appeal is from a judgment awarding the plaintiff $20,000 compensatory damages and $125,000 punitive damages. The defendant on appeal attacks the award of punitive damages. We affirm the judgment.

I.

Ray C. Fahrenberg, the plaintiff, commenced a civil action seeking compensatory damages of $30,000 from defendants Bremer, Tengel and Krause for unlawfully removing coins belonging to plaintiff from plaintiff's business, Doc's Camera Mart, and seeking punitive damages of $250,000 from defendant Krause individually, alleging that Krause intentionally and knowingly converted the coins to his own use and for his own profit, in wanton, wilful and reckless disregard of the plaintiff's rights.

Ralph Bremer and Fred Tengel had been convicted of burglarizing Doc's Camera Mart. Defendant Krause

had been granted immunity from prosecution for burglary and receiving stolen property in exchange for his testimony in the criminal trial against defendants Bremer and Tengel.

In the civil case, which was tried to a jury after the criminal convictions, defendant Tengel testified that he had known defendant Bremer for five to ten years prior to the burglary but that he had first met defendant Krause approximately one to two days before the burglary when the burglary was planned. Tengel testified that Krause explained the layout of Doc's Camera Mart and stated that there were no burglar alarms. Krause also promised to pay for all coins stolen by Bremer and Tengel from Doc's Camera Mart. Tengel further testified that defendants Bremer and Tengel broke a window and entered Doc's Camera Mart in the middle of the night and removed coins which they took to defendant Krause who paid Tengel $3,000 for the coins. Krause told Tengel that the value of the stolen coin collection was $10,000.

Defendant Bremer did not testify at the trial because he no longer resided in Milwaukee, Wisconsin. His deposition, taken April 21, 1975, was read into the record. Defendant Bremer stated that approximately one week prior to the burglary, he and defendant Krause met and discussed breaking into Doc's Camera Mart. Like defendant Tengel, Bremer stated that Krause described the interior of Doc's Camera Mart, the location of the various coins and the absence of a burglar alarm system and that Krause suggested that Bremer enlist the aid of a friend to commit the burglary. According to Bremer, he spoke with Tengel, and the three defendants planned the burglary. Bremer stated that Krause told him the coins stolen were probably worth $40,000 to $50,000. Krause gave Bremer $300 initially, promising to pay him more money after he sold the coins. Upon demand, Krause gave Bremer an additional $1,100. Neither Tengel nor Bremer knew anything about coins or coin collecting prior to the burglary.

At trial plaintiff examined defendant Krause adversely. Krause, while acknowledging that he knew where Doc's Camera Mart was located, denied ever having entered the shop prior to September 1968 (the month during which the burglary occurred). However, the plaintiff, who had seen Krause at coin conventions, testified that he specifically remembered Krause being in or near his store twice within the two-month period before the burglary.

At trial Krause testified that he had met Bremer approximately one week prior to the burglary; that he had never discussed with Bremer the possibility of burglarizing Doc's; and that he and Bremer had met at 10 p.m. on the night of the burglary to discuss the possibility of Krause's buying coins that Bremer would get later that evening.

Krause denied knowing where Bremer and Tengel had gone when they left him on the night of the burglary, denied knowing that they intended to burglarize Doc's Camera Mart, and also denied giving them a layout of the store or information on how to break into Doc's. Krause testified, however, that Bremer and Tengel returned about 4 a.m. with about three boxes of coins which he knew were stolen. Krause testified that he had been involved in the coin business for several years; that he had purchased and sold about a couple million dollars worth of coins in a five-year period from 1968-1973; and that on a business trip to Rockford, Illinois, he had twenty-eight thousand four hundred dollars worth of coins.

Krause's testimony at trial was inconsistent in several respects with his testimony at the preliminary hearing in the criminal action, and, when confronted with the inconsistencies, he stated at trial that he had lied at the preliminary hearing.

Over defendant's objection, Krause was recalled as an adverse witness, and Krause admitted to having two prior arrests and convictions for criminal offenses.

Despite objections by Tengel's attorney, defendant Tengel was recalled as an adverse witness, and Tengel testified that he had been convicted of a crime three times, including the burglary of Doc's Camera Mart.

The jury in answer to special verdict questions found that defendant Krause had conspired and counseled defendants Bremer and Tengel to burglarize Doc's Camera Mart and had agreed to and did pay them for the coins which he knew were stolen. The jury assessed $20,000 compensatory damages against Krause, Bremer and Tengel and $200,000 punitive damages against defendant Krause.

Krause's counsel moved to set aside the verdict and for a new trial pursuant to sec. 805.15(1), Stats.,[1] on the grounds that the jury's award of punitive damages was excessive and without evidentiary foundation and that the trial court had erred in denying defendant's motion for a mistrial which was based on improper reference to Krause's criminal record in plaintiff's closing argument.

The circuit court denied defendant's motion to set aside the verdict and for a new trial but reduced the amount of punitive damages from $200,000 to $125,000.[2]

---

[1] Sec. 805.15(1), Stats. 1975:

"805.15   New trials.

"(1) MOTION.   A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice. Orders granting a new trial on grounds other than in the interest of justice, need not include a finding that granting a new trial is also in the interest of justice."

[2] Sec. 805.15(6), Stats. 1975, provides:

"(6) REMITTITUR; ADDITUR.   If a trial court determines that a verdict is excessive or inadequate, not due to perversity or prejudice or as a result of error during trial (other than an error as to damages), the court shall determine the amount which as a matter of law is reasonable, and shall order a new trial on the issue

## II.

Defendant Krause contends on appeal[3] that punitive damages were not "justified" in this case because there was "no such showing of aggravation, insult or cruelty with vindictiveness and malice." Defendant cites several cases for the proposition that the plaintiff must show "express malice or ill will" to justify punitive damages. We do not find the cited cases persuasive.[4]

This court has declined to accept the position asserted by the defendant, namely that unless the plaintiff shows express malice or ill will he cannot recover punitive damages. In *Kink v. Combs,* 28 Wis.2d 65, 79, 135 N.W. 2d 789 (1965), we stated:

"The defendant claims that the question of punitive or exemplary damages should not have been submitted to the jury because defendant's acts were not activated by malice or vindictiveness. However, malice or vindictiveness are not the *sine qua non* of punitive damages.

of damages, unless within 10 days the party to whom the option is offered elects to accept judgment in the changed amount. If the option is not accepted, the order for new trial shall be deemed final for purposes of appeal on the last day of the option period."

[3] We shall refer to defendant Krause, but Krause died on June 7, 1978, after judgment, and the estate of Keith Krause appealed the judgment against Krause. No one argues that sec. 895.02, Stats., is applicable.

[4] *Oconto County v. Union Mfg. Co.,* 190 Wis. 44, 47, 208 N.W. 989 (1926), which was cited by the defendant, does not support his position; this court commented: " 'Double or treble damages provided for by statute in many jurisdictions, like exemplary damages generally, are confined to cases where some element of recklessness, wantonness, wilfulness, or evil design enters into the act.' " *Calero v. Del Chemical Corp.,* 68 Wis.2d 487, 506, 228 N.W.2d 737 (1975), *Grace v. McArthur,* 76 Wis. 641, 654, 45 N.W. 518 (1890), and *Eviston v. Cramer,* 57 Wis. 570, 15 N.W. 760 (1883), cited by the defendant, are defamation cases. The comments about malice in these cases are not applicable to the instant case.

" 'Where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime, all but a few courts have permitted the jury to award in the tort action "punitive" or "exemplary" damages, or what is sometimes called "smart money." ' Prosser, Law of Torts (2d ed.), p. 9, sec. 2.

"For the award of punitive damages it is sufficient that there be a showing of wanton, wilful, or reckless disregard of the plaintiff's rights. 6 C. J. S., Assault and Battery, p. 904, sec. 55b(3)."

To sustain an award for punitive damages, the law does not require a specific finding of an intentional and ruthless desire to injure, vex or annoy. The injured party need show only a wanton, willful or reckless disregard of the rights of others on the part of the wrongdoer. "Reckless indifference to the rights of others and conscious action in deliberate disregard of them . . . may provide the necessary state of mind to justify punitive damages." 4 Restatement (Second) of *Torts* sec. 908, comment *b*, p. 465 (1977). *See also, Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 697, 271 N.W.2d 368 (1978); *Mid-Continental Refrigerator Co. v. Straka*, 47 Wis.2d 739, 744–748, 178 N.W.2d 28 (1970); *Jones v. Fisher*, 42 Wis.2d 209, 218, 219, 166 N.W.2d 175 (1969); McCormick, *Damages* sec. 79, p. 280 (1935); Prosser, *Law of Torts* 10 (4th ed. 1971).[5]

---

[5] In *Meshane v. Second Street Co.*, 197 Wis. 382, 387, 222 N.W. 320 (1928), we said:

"Any exact and precise definition of the technical term in law of the 'malice' that must be shown in order that there may be a basis for punitory damages in addition to compensatory damages for a breach of some duty by a defendant when such is the proper subject of an action in tort, is hard to find and still harder to frame. It is evident, however, from all the authorities that in any particular case, not in and of itself a malicious action, in order that punitory damages may be assessed something must be shown over and above the mere breach of duty for which compensatory

The fact that the conduct on which the lawsuit is based is unlawful or subjects the defendant to criminal prosecution does not in and of itself authorize the recovery of punitive damages. Punitive damages are not allowed for all torts or crimes but are allowed only for those "which are malicious, outrageous or a wanton disregard of personal rights which require the added sanction of a punitive damage to deter others from committing acts against human dignity." *Entzminger v. Ford Motor Co.,* 47 Wis. 2d 751, 757, 758, 177 N.W.2d 899 (1970).

There was sufficient evidence in the case at bar to justify the trial court's submitting the punitive damage questions to the jury, and the jury was instructed that punitive damages may not be awarded unless it found that the acts of the defendant were done maliciously or in wilful or reckless disregard of the plaintiff's rights.[6] There was ample evidence at trial to support the jury's conclusion that the defendant's wrongdoing was in wanton, wilful or reckless disregard of the plaintiff's rights. The record contains evidence that Krause went to Doc's

---

damages can be given. That is, a showing of a bad intent deserving punishment, or something in the nature of special ill will towards the person injured, or a wanton, deliberate disregard of the particular duty then being breached, or that which resembles gross as distinguished from ordinary negligence."

[6] The trial court's instruction was substantially the same as Wis J Instruction—Civil No. 1707, which states:

"1707 **Punitive damages; malice.**

"Punitive damages are never a matter of right, but, when allowable, may be awarded or withheld in the discretion of the jury. Punitive damages may not be awarded unless the acts of the defendant in question were done maliciously or in willful or reckless disregard of the plaintiff's rights, and, even if malicious, willful or reckless, you may withhold or allow punitive damages as you see fit. You may not, however, award punitive damages unless you have awarded compensatory damages. . . ."

Camera Mart before the burglary, concluded that there were no burglar alarms, determined the nature and location of the valuable coins in the store, found two people to burglarize the store and advised them how to proceed with the crime, and then bought the stolen coins. The jury could reasonably conclude that Krause's conduct reflected a wilful, wanton and reckless disregard of the plaintiff's rights warranting the assessment of punitive damages against Krause.

### III.

Defendant Krause further argues that even if the jury was justified in awarding punitive damages, the verdict was perverse. Defendant Krause argues that plaintiff's attorney made an improper argument to the jury about Krause's wealth and Krause's leading his co-defendants down the road to crime and that these remarks caused the jury to reach a verdict based on passion and prejudice, not on the evidence and the law.

Our court has said that a verdict is perverse

"when the jury clearly refuses to follow the direction or instruction of the trial court upon a point of law, or where the verdict reflects highly emotional, inflammatory or immaterial considerations, or an obvious prejudgment with no attempt to be fair." *Redepenning v. Dore,* 56 Wis.2d 129, 134, 201 N.W.2d 580 (1972).

*See also, Grammoll v. Last,* 218 Wis. 621, 632, 261 N.W. 719 (1935).

If a verdict is perverse, the trial court has no discretion. It must set aside the verdict and order a new trial. *Redepenning v. Dore,* 56 Wis.2d 129, 134, 201 N.W.2d 580 (1972) ; *Meke v. Nicol,* 56 Wis.2d 654, 203 N.W.2d 129 (1973). Although the trial court here did not spe-

cifically conclude that the verdict was not perverse, it implicitly so held by failing to set aside the verdict. We have said that "the trial judge . . . is in a better position to determine whether perversity permeated the verdict [and its] conclusion will not be upset unless it can be shown to be an abuse of discretion." *Redepenning v. Dore,* 56 Wis.2d 129, 134, 201 N.W.2d 580 (1972). Unfortunately the trial court in concluding that the award of punitive damages was excessive did not set forth its analysis of the evidence or its process of reasoning, and we must review the entire record as a matter of first impression to determine whether the verdict was perverse.[7]

Krause argues that this verdict reflects emotional, inflammatory and immaterial considerations, because plaintiff's counsel, commenting on the defendant's wealth in closing argument, caused the jury to consider matters not fairly in evidence. The defendant, citing *Meke v. Nicol,* 56 Wis.2d 654, 664, 203 N.W.2d 129 (1973), and *McAllister v. Kimberly-Clark Co.,* 169 Wis. 473, 173 N.W. 216 (1919), argues that no evidence of the defendant's wealth was admissible in this case. In the *Meke* and *McAllister* cases this court held that evidence of wealth of a defendant is prohibited where joint tortfeasors are sued for punitive damages. The *Meke* and *McAllister* cases are distinguishable from the case at bar. In both these cases punitive damages were sought against all defendants. Here, punitive damages were sought only

---

[7] "In cases where the trial judge has failed to set forth his reasons, we examine the record *ab initio* to resolve the post-verdict damage questions. Unless there is evidence that the trial judge has undertaken a reasonable inquiry and examination of the facts as the basis of his decision, his decision will be disregarded by this court. Such a decision on its face shows an abuse of discretion for failure to exercise discretion." *McCleary v. State,* 49 Wis.2d 263, 277–278, 182 N.W.2d 512 (1971).

against defendant Krause. The purpose of the *McAllister* rule was articulated in *Ogodziski v. Gara,* 173 Wis. 380, 381, 181 N.W. 231 (1921) :

"[I]n the case of two or more defendants the reception of such testimony is error on the ground that evidence as to the financial ability of one affects the amount of punitive damages assessed against all and hence, since each one is liable for the whole judgment, he may be unjustly mulcted in damages because of the wealth of a codefendant, though he himself may be a poor man."

Because plaintiff sought punitive damages only against defendant Krause and not against the other defendants, no one would have been "unjustly mulcted in damages," if evidence of Krause's wealth had been admitted. Evidence of Krause's wealth was relevant to the issue of punitive damages. We have held in prior cases that evidence of a defendant's wealth and ability to pay is admissible and relevant in assessing the amount to be awarded as punitive damages that would be just and sufficient as a punishment and deterrent. *Dalton v. Meister,* 52 Wis.2d 173, 181, 188 N.W.2d 494 (1971) ; *Jones v. Fisher,* 42 Wis.2d 209, 220, 221, 166 N.W.2d 175 (1969) ; *Fuchs v. Kupper,* 22 Wis.2d 107, 113, 125 N.W. 2d 360 (1963) ; *Malco v. Midwest Aluminum Sales,* 14 Wis.2d 57, 109 N.W.2d 516 (1961) ; *Gladfeldter v. Doemel,* 2 Wis.2d 635, 648, 87 N.W.2d 490 (1958) ; *Thomas v. Williams,* 139 Wis. 467, 470, 121 N.W. 148 (1909) ; *Draper v. Baker,* 61 Wis. 450, 21 N.W. 527 (1884). *See also,* Ghiardi, *Personal Injury Damages in Wisconsin* sec. 2.10 (Wis. Current Law Series 1964) ; Wickhem, *The Rule of Exemplary Damages in Wisconsin,* 2 Wis. L. Rev. 129, 154 (1923).

The trial court, following Wis. J. I.—Civil No. 1707, instructed the jury as to the consideration to be given to evidence of the defendant's wealth:

"If you award punitive damages, you may consider the defendant's wealth so far as it appears from the evidence, because such damages, to accomplish their purpose, may be proportionate in some general way to the defendant's ability to pay."

The defendant next contends that the jury was not presented with adequate evidence of Krause's wealth and that therefore plaintiff's closing argument that Krause was a wealthy man was inflammatory. The only evidence in the record concerning defendant Krause's financial condition was his testimony that he had purchased and sold "about a couple of million dollars worth" of coins in a five-year period from 1968–1973 and that on a buying trip he had over twenty-eight thousand dollars worth of coins.

Defendant argues that the evidence of the extent of Krause's business was not evidence of wealth; that a high gross dollar volume of a business does not mean the business is profitable; and that counsel's closing argument appealed to the jury's emotion and passion.

Although the evidence of wealth in this case is minimal and does not even come close to an attempt to prove net worth, *cf. Dalton v. Meister*, 52 Wis.2d 173, 182, 188 N.W.2d 494 (1971), evidence of the extent of defendant's business interests is relevant and is admissible for whatever it is worth.[8] The jury was instructed that it may consider the defendant's wealth so far as it appears from the evidence.

Defendant objects to the following argument of plaintiff's counsel to the jury:

[8] In *Lisowski v. Chenenoff*, 37 Wis.2d 610, 634, 635, 155 N.W.2d 619 (1968), the trial court and this court considered as relevant and competent evidence relating to the size of the defendant's checking account, that defendant owned six homes and an apartment building and that he had negotiated an unsecured loan for $85,000 based solely on a financial statement. "The jury could well infer that he was a man of some means."

"If you're going to give him, say, a couple of thousand dollars [punitive damages], believe me, he's just really fooled you then. This fellow has dealt in a million dollars' worth of coins . . . . Ladies and gentlemen, I think that unless you get into six figures with this fellow, as punishment or punitive damages, you aren't even going to touch him. You aren't even going to bother him one bit."

This court has in a number of cases permitted trial counsel to suggest a dollar amount of compensatory damages which counsel believes the evidence will fairly and reasonably support, see *Peot v. Ferraro*, 83 Wis.2d 727, 743, 266 N.W.2d 586 (1978). The jury in the instant case was instructed that the argument, statements and remarks of the attorneys and the conclusions and opinions of the attorneys were not to be considered as evidence, and that the jury was to draw its own conclusion and decide upon a verdict according to the evidence. We conclude that counsel's argument was not improper.

Defendant further claims that plaintiff's improper argument relating to Krause being the leader of the burglary caused the jury to consider matters not properly in issue and caused the jury to bring in an award punishing Krause not merely for his role in the crime against the plaintiff but for his role in leading his co-defendants down the road of crime. Defendant points out that plaintiff's counsel repeatedly referred to Krause's leadership role in his relationship with the co-defendants[9] and contends that "the huge punitive damage award returned

[9] Defendant quotes these five comments in closing argument as illustrating this point:

". . . I'll grant that he made a mistake [Tengel] by entering into this life of crime. But that carrot was held out to him, [by Krause] and he took it."

"Mr. Tengel went on to say that they carried out the stuff. . . . and Mr. Krause was excited when he saw all the coins that were there. But even then he was disgusted that they didn't get enough. He wanted even more . . . why didn't they take more?"

"That was Mr. Krause's approach to Mr. Tengel after he gets him started, number one, on a road of crime."

by the jury shows that the jury took [the] remarks to heart."

Plaintiff's counsel never demanded that Krause be punished for causing his co-defendants to become criminals. Counsel's closing remarks were based on evidence in the record from which the jury could reasonably infer that the burglary was masterminded and led by Krause. It was proper for plaintiff to argue that Krause was the leader of the burglary when he was trying to persuade the jury that Krause's conduct demonstrated a wilful and reckless disregard of plaintiff's property rights and when he was trying to diminish the damage done to the credibility of the co-defendants whom the jury knew were convicted criminals. If we put the closing remarks of the plaintiff's counsel in this context and in the context of the entire closing statement, we cannot construe the remarks as an argument to the jury that Krause should be punished for causing the co-defendants to become criminals.

We have long recognized the necessity for a reasonable latitude in oral argument even after the evidence is in. *Kink v. Combs,* 28 Wis.2d 65, 70, 135 N.W.2d 789 (1965). In *Fields v. Creek,* 21 Wis.2d 562, 572, 124 N.W.2d 599 (1963), we noted that "it is difficult to lay down precise standards which will successfully separate fair argument from unfair argument. We are not prepared to strike down all colorful, forensic thrusts before the jury. Oral argument need not be confined to sterile reiteration of the testimony which was presented. Counsel have the right to analyze and exhort." We are unwilling to accept defendant's contention that because the jury's verdict

---

"Mr. Krause is the fellow that got these fellows started . . . . He talked them into this particular whole deal. . . . After he gets two other fellows started in crime, he gets immunity. . . ."

"Don't let anybody criticize you—[the jury] that you're being lenient on somebody who starts two guys off. . . ."

was in six figures it reflects highly emotional, inflammatory or immaterial considerations.

On review of the record, we cannot conclude that "considerations which were ulterior to a reasonably fair application of the judgment of the jury to the evidence under the instruction of the court have controlled the jury." *Nelson v. Fisher Well Drilling Co.*, 64 Wis.2d 201, 210, 211, 218 N.W.2d 489 (1974).[10]

### IV.

The defendant next asserts that even if the verdict was not perverse, it was excessive. The jury award for punitive damages was in the amount of $200,000. The trial court, obviously concluding that this award was excessive, reduced it to $125,000. The defendant argues that the award of $125,000 is also excessive.

We place a significant burden on the trial court in deciding whether a jury verdict of damages is proper in a particular case, and we have on numerous occasions directed the trial court to state its reasons for reducing damages awarded by the jury, so that we may properly review its decision. Where the trial court states its reasons for finding the jury's award of damages excessive and for reducing the award, we will reverse the trial

[10] The defendant also argues that the amount assessed as punitive damages is so excessive as to indicate that the jury considered factors ulterior to the evidence presented at trial and that this excessiveness renders the verdict perverse. We have consistently held that excessiveness of a verdict alone, except where the the verdict is "grossly so and readily apparent, is not sufficient to label a verdict perverse." *Redepenning v. Dore*, 56 Wis.2d 129, 134, 201 N.W.2d 580 (1972); *Brown v. Montgomery Ward & Co.*, 221 Wis. 628, 267 N.W. 292 (1936). We discuss whether the award is excessive in part IV of this opinion.

court's determination only if we conclude there has been an abuse of discretion. Under such circumstances, there are two questions on review: Was the trial court's determination that the jury award was excessive an abuse of discretion and was the trial court's fixing of a reduced amount an abuse of discretion? *Koele v. Radue*, 81 Wis. 2d 583, 587, 589, 260 N.W.2d 766 (1978); *Karl v. Employers Insurance of Wausau*, 78 Wis.2d 284, 304, 254 N.W.2d 255 (1977).

The trial court, in the instant case, however, failed to file a memorandum decision and the record is silent as to any explanation which the trial court offered from the bench for reducing the amount of the award. Thus we do not know what factors were considered by the trial court when it set aside the verdict or when it reduced the punitive damage award to $125,000. If the trial court fails to state its reasons for its decision on review of the damages award as in the instant case, this court on appeal must review the entire record as a matter of first impression and determine whether in its judgment the damages award of the jury or of the trial judge is excessive. *Neider v. Spoehr*, 39 Wis.2d 552, 559–563, 159 N.W.2d 587 (1968).

In *Bach v. Liberty Mutual Fire Insurance Co.*, 36 Wis. 2d 72, 83, 152 N.W.2d 911 (1967), we explained the need for the trial court to state its reasons and the different kind of review dependent on the trial court's procedure:

"We are handicapped on this appeal in that there is no analysis of the evidence by the trial court. Because the trial judge has the advantage of personal observation of the witnesses . . . his decisions on the excessiveness of a verdict have great weight on review. Because of the heavy reliance placed by this court on the trial court's view of the damages, this court has declared that

when a verdict is found to be excessive by the trial court, the trial court 'should state its reasons for its determination.' [*Moritz v. Allied American Mut. Fire Ins. Co.,* 27 Wis.2d 13, 24, 133 N.W.2d 235 (1965)] Where the trial court determines that the jury verdict is not excessive, we have recommended that the trial court state its reasons for so ruling. [*Ballard v. Lumbermens Mut. Casualty Co.,* 33 Wis.2d 601, 607, 148 N.W.2d 65 (1967) (not decided at the time of trial)]

"In the instant case the trial court did not file a detailed memorandum but stated that the award, although at the 'upper limits of damages' was 'not out of reason.' Because of the absence of an analysis by the trial court, this court on appeal must 'review the entire record as a matter of first impressing and ascertain whether, in its judgment, the verdict is excessive.' [*Moritz v. Allied American Mut. Fire Ins. Co., supra,* footnote 13, at page 24]."

*See also, Burke v. Poeschl Brothers, Inc.,* 38 Wis.2d 225, 236, 156 N.W.2d 378 (1968).

In the case at bar we must review the record anew to determine whether the judgment awarding $125,000 for punitive damages is excessive.[11] The evidence must be reviewed in the light most favorable to the plaintiff. *Kobelinski v. Milwaukee & S. Transport Corp.,* 56 Wis.2d 504, 525, 202 N.W.2d 415 (1972), citing *Bash v. Employers Mut. Liability Ins. Co.,* 38 Wis.2d 440, 157 N.W. 2d 634 (1968).

Determining the reasonableness of any damages award is difficult. Nevertheless we have held that once the jury "has decided in its discretion to award punitive damages . . . the amount thereof should be subject to the court's revision in the same manner as compensatory damages."

[11] We need not determine whether the trial court erred in holding that the jury award of $200,000 was excessive. The plaintiff accepted the reduced award.

*Malco v. Midwest Aluminum Sales Co., supra,* 14 Wis.2d at 65.[12] In *Jones v. Fisher,* 42 Wis.2d 209, 220, 166 N.W.2d 175 (1969), this court determined that the punitive damages award was excessive, and we gave the plaintiff the option of accepting a reduced reasonable amount or a new trial on damages. *See also Roach v. Keane,* 73 Wis.2d 524, 541, 542, 243 N.W.2d 508 (1976).

The defendant asserts that $125,000 is excessive because the amount is not commensurate with the compensatory award ($20,000) or with the maximum fine imposed by the legislature for a comparable criminal offense. The defendant urges this court to compare the punitive damages to the maximum fine, $10,000, for receiving stolen property. Sec. 943.34, Stats.

---

[12] *Malco v. Midwest Aluminum Sales Co., supra,* 14 Wis.2d at 65, determined that:

"In *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N.W. (2d) 393, we changed the rule of options as applied to compensatory damages and allowed the trial court to determine what it thought to be a reasonable sum and to grant the plaintiff the option to accept it or have a new trial. It seems to us that once the jury has decided in its discretion to award punitive damages, the amount thereof must be subject to the control of the court. True, the jury need not award any punitive damages, but having done so, the amount thereof should be subject to the court's revision in the same manner as compensatory damages. It is not logical to say excessive punitive damages cannot be reduced by the court to a reasonable amount because the jury had the power to deny any amount. In such cases, the fact is the jury exercised its discretion and made an excessive award of punitive damages. We hold that the *Powers* rule extends to punitive damages and a trial court has the power to reduce the amount of punitive damages to what it determines is a fair and reasonable amount for such kind of damages. This extension of the *Powers* rule to punitive damages is urged in recent legal literature. See Ghiardi, Exemplary or Punitive Damages in Wisconsin, 1 Wisconsin Continuing Legal Education (1961), 69. Also on the problem of punitive damages, see Wickhem, The Rule of Exemplary Damages in Wisconsin, 2 Wisconsin Law Review (1923), 129."

In *Wozniak v. Local 1111 of UE*, 57 Wis.2d 725, 731, 205 N.W.2d 369 (1973), *Meke v. Nicol*, 56 Wis.2d 654, 664, 203 N.W.2d 129 (1973), and *Lisowski v. Chenenoff*, 37 Wis.2d 610, 634, 155 N.W.2d 619 (1968), this court recognized that compensatory damages and criminal fine are relevant to the assessment of punitive damages. This court has never held, however, that there is any mathematical formula for calculating punitive damages on the basis of the compensatory damages or the criminal fine. Plaintiff argues that the award of $125,000 is about six times the maximum fine of $20,000, if defendant were found guilty of just two counts of receiving stolen property. In *Lisowski v. Chenenoff*, 37 Wis.2d 610, 155 N.W.2d 619 (1964), the ratio of punitive damages to penalty was 10 to 1, and in *Dalton v. Meister*, 52 Wis.2d 173, 188 N.W.2d 494 (1971), it was 75 to 1. In *Meke v. Nicol*, 56 Wis.2d 654, 664, 203 N.W.2d 129 (1973), the punitive damages were 13 times the maximum fine for a similar offense. In *Malco v. Midwest Aluminum Sales Co.*, 14 Wis.2d 57, 66, 109 N.W.2d 516 (1961), the court stated that "[t]here is no arbitrary rule that punitive damages cannot equal 15 times the compensatory damages." In *Dalton v. Meister*, 52 Wis.2d 173, 181, 188 N.W.2d 494 (1971), the court noted that "there is no arithmetic proportion to which punitive damages should relate to the wealth of the defendant or to the damage done the plaintiff . . . ."

This court has said that "the test of excessiveness [of punitive damages] does not necessarily depend upon some arbitrary proportion . . . . Punitive damage ought to serve its purpose." *Malco v. Midwest Aluminum Sales Co.*, 14 Wis.2d 57, 66, 109 N.W.2d 516 (1961). *See also* Prosser, *Law of Torts* 14 (4th ed. 1971). The amount to be awarded for punitive damages must be decided on a case-by-case basis; the circumstances of each case must be

considered. *Calero v. Del Chemical Corp.*, 68 Wis.2d 487, 511, 228 N.W.2d 737 (1975).

Punitive damages are not awarded to compensate the plaintiff for the loss sustained. They are allowed for purposes of public policy to punish the wrongdoer and to deter him and others from future similar wrongdoing. *Lisowski v. Chenenoff*, 37 Wis.2d 610, 633, 155 N.W.2d 619 (1968); *Kink v. Combs,* 28 Wis.2d 65, 80, 81, 135 N.W.2d 289 (1965); Restatement of Torts (Second), sec. 908, Comment *a* (1977). An award which is more than necessary to serve its purposes (punishment and deterrence) or which inflicts a penalty or burden on the defendant which is disproportionate to the wrongdoing is excessive and is contrary to public policy.

Factors to be considered in determining the proper amount to be awarded as punitive damages include: the grievousness of defendant's acts; the degree of malicious intention; the potential damage which might have been done by such acts as well as the actual damage; and the defendant's ability to pay. *Herrmeyer v. Kleeman,* 76 Wis.2d 410, 414, 415, 251 N.W.2d 445 (1977); *Malco v. Midwest Aluminum Sales Co., supra,* 14 Wis.2d at 66; *Dalton v. Meister,* 52 Wis.2d 173, 180, 188 N.W.2d 494 (1971); 4 Restatement of *Torts* (Second) sec. 908, Comment *e,* pp. 466–467 (1977).

The punitive damages awarded in this case are substantial. Punitive damages are properly denominated "smart money" and are designed to hurt in order to punish and to deter. *Cieslewski v. Mutual Service Cas. Ins. Co.,* 84 Wis.2d 91, 102, 267 N.W.2d 595 (1978). The jury and trial court could have believed that defendant Krause was a coin dealer with a fairly substantial business; that he deliberately staked out plaintiff's store, persuaded the two co-defendants to perform the bur-

glary, and prepared the plan for the burglary; and that Krause then bought the coins, knowing they were stolen. The jury could have believed that defendant Krause lied under oath and showed no remorse for his criminal activities. We assume that the trial court in reducing the punitive damages considered $200,000 as an over-reaction and considered $125,000 to be an adequate amount to accomplish the punishment and deterrent purposes of punitive damages without inflicting a penalty on the defendant disproportionate to the wrongdoing.

The defendant does not, and cannot, argue on appeal that, if we consider the defendant's wealth, we would conclude that the judgment for punitive damages is excessive. As we have previously said, the wealth of the wrongdoer is a factor which may be considered in determining the amount of punitive damages. However, the wealth of defendant Krause in the instant case is not a significant consideration in reviewing the punitive damages on appeal because neither the plaintiff nor the defendant put in sufficient evidence to show defendant's net worth, net earnings, or financial resources. Failure to show net worth does not invalidate the award of punitive damages, but eliminates one factor by which the reasonableness of the award can be gauged.

The defendant does not argue that the judgment for punitive damages is excessive in light of the nature of defendant's conduct or in light of the purposes of awarding punitive damages. Defendant's argument as to excessiveness is limited to a mathematical calculation relating punitive damages to compensatory damages and criminal penalties. Although the amount of compensatory damages and criminal penalties have some relevancy to the amount of punitive damages and may be factors in determining the reasonableness of the punitive dam-

ages award, we have not been willing in the past, and are not willing in this case, to adopt a mathematical formula for awarding punitive damages. In punitive damages, as in damages for pain and suffering, the law furnishes no mechanical legal rule for their measurement. The amount rests initially in the discretion of the jury. We are reluctant to set aside an award because it is large or we would have awarded less. As we have said in cases involving compensatory damages, " '[A]ll that the court can do is to see that the jury approximates a sane estimate, or, as it is sometimes said, see that the results attained do not shock the judicial conscience.' " *Bethke v. Duwe*, 256 Wis. 378, 385, 41 N.W.2d 277 (1950) ; *Makowski v. Ehlenbach*, 11 Wis.2d 38, 42, 103 N.W.2d 907 (1960) ; *Jones v. Fisher*, 42 Wis.2d 209, 217, 166 N.W.2d 175 (1969).

Considering the character of the defendant's conduct, the value of the property taken, and the fine set forth by the legislature for the crimes involved, we conclude that $125,000 serves the objectives of punishment and deterrence and is not so large that it inflicts a penalty disproportionate to the defendant's wrongdoing. The sum is not, under the circumstances, shocking to the conscience of the court.

## V.

Finally the defendant argues that plaintiff's counsel, in his closing argument, made improper reference to the defendant's criminal convictions.

The record reveals that there was considerable discussion between both plaintiff and defense counsel and the trial judge concerning the permissibility of inquiring into Krause's criminal convictions. After much debate the trial court restricted plaintiff's counsel to asking two questions: Had Krause ever been convicted of any

crimes? And if so how many times had Krause been convicted? The defendant admitted that he had two convictions. This questioning was consistent with sec. 906.09 (1), Stats., which limits the use of prior convictions to impeaching the credibility of the witness.

Defendant moved for a mistrial and seeks reversal on appeal on the basis that plaintiff's counsel improperly referred to these two convictions in closing argument. The defendant asserts that counsel's argument suggested to the jury that Krause, a known criminal, made felons of the co-defendants and thus the closing argument went beyond the bounds of propriety in that Krause's convictions were used for purposes other than impeaching Krause's credibility.

The trial court reviewed the statements about which defendant complains and so has this court. The trial court properly concluded that the convictions were not used for other than impeaching credibility. Counsel's remarks do not "exceed the bounds of fairness," and we will not disturb the jury's conclusion. *Fields v. Creek,* 21 Wis.2d 562, 572, 124 N.W.2d 599 (1963).

For the foregoing reasons, we conclude that the judgment awarding $125,000 punitive damages against the defendant Krause was not perverse or excessive, and we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.

COFFEY, J., took no part.